WINCKOWSKI *v.* DODGE.

1. AUTOMOBILES — MUNICIPAL CORPORATIONS — NEGLIGENCE — INFANTS—STREETS—RIGHTS OF PEDESTRIANS.

Where plaintiff, an infant of about nine years of age, was riding in a city street upon the back of a loaded lumber wagon that was followed by an oil wagon and team, and where defendants' employee, driving an automobile in the opposite direction, left the side of the street on which he was proceeding, in order to pass the lumber wagon which started to turn in front of the motor car at a street crossing and onto the intersecting street, and the evidence tended to show that the automobile was not going faster

than 15 miles an hour and might have stopped and permitted the wagon to pass in front of it without crossing to the wrong side of the street, that plaintiff alighted from the loaded wagon and attempted to pass to the curb, being struck by the motor car which gave no warning, and that other vehicles were passing the corner at the same time, one closely following the lumber wagon, the issue of negligence was a question for the jury, and a verdict was improperly directed for the defendants.[1]

2. SAME—LAW OF ROAD—PERSONAL INJURIES.

When two vehicles pass on the street it is the duty of each driver to look out for pedestrians suddenly appearing from behind the other vehicle.

3. SAME—VIOLATION OF RULE—RIGHT SIDE.

The driver who violates the law of the road by driving on the wrong side assumes the risk of such an experiment; he is required to exercise greater caution than if he proceeded on the correct side; if a collision takes place, the presumption is against him.

4. SAME—SPEED.

Nor was he exempt from liability because he was not going faster than the permitted rate of speed, but, being bound to anticipate that he might meet passing pedestrians at any point, must keep a proper lookout for them and keep his machine under such control as will enable him to avoid a collision. Blowing of the horn is not sufficient if the circumstances at a given point demand other precautions.

5. SAME—CONTRIBUTORY NEGLIGENCE—INFANTS.

The confusing circumstances arising from the fact that another team followed that which plaintiff rode with and that defendant's automobile approached down the wrong side of the street, passing around the wagon on which plaintiff was riding, which also turned across the street, made the issue of contributory negligence of the child a question of fact. The care or caution to be required of

---

[1] Upon the reciprocal duty of the operator of an automobile and a pedestrian to use care, see notes in 38 L. R. A. (N. S.) 487; 42 L. R. A. (N. S.) 1178, and 51 L. R. A. (N. S.) 990. And as to the duty of pedestrians to look out for automobiles, see notes in 3 L. R. A. (N. S.) 345; 20 L. R. A. (N. S.) 232; 38 L. R. A. (N. S.) 488, and 42 L. R. A. (N. S.) 1179.

The question of the rule of the road governing vehicles proceeding in the same direction is discussed in a note in 41 L. R. A. (N. S.) 337.

him was to be measured by his age and capacity and he was not required to exercise the same care that the law requires of an adult.

6. SAME—UNLAWFUL ACT—RIGHT TO RELY ON DUE CARE.
   Contributory negligence will not be imputed to a minor for failing to anticipate a negligent or unlawful act of the defendant. And, failure to look for a vehicle passing in the wrong direction or on the wrong side of the street, would not warrant a charge of contributory negligence.

Error to Wayne; Mandell, J. Submitted October 14, 1914. (Docket No. 96.) Decided December 18, 1914.

Case by Frank Winckowski, by next friend, against John F. Dodge and another, copartners under the name of Dodge Brothers, for personal injuries. Judgment for defendants on a directed verdict. Plaintiff brings error. Reversed.

*Florian, Moore & Wilson,* for appellant.

*Douglas, Eaman & Barbour,* for appellees.

STEERE, J. This action was brought to recover damages for personal injuries alleged to have been caused by the negligence of defendants' employee in running down plaintiff with an automobile on Joseph Campau avenue in the city of Detroit, on November 30, 1912. The accident occurred just south of where Joseph Campau avenue is crossed by Smith avenue. Joseph Campau runs north and south, is 35 feet wide, and has a double track street car line extending along it, the clear space for vehicles on either side of said tracks being about 10 feet. On the occasion in question an employee of defendants named William Wasmund was driving for them an automobile used in connection with their business, called a "pick-up" car, of 22-horse power and estimated to weigh "not over

2,500 pounds," going south on Joseph Campau
avenue. Following behind him at a distance of about
50 feet was another pick-up car belonging to the Kel-
sey Wheel Company, driven by one of its employees.
They were on the west, and to them the right, side
of the avenue. On the east side two horse-drawn
wagons were moving north, the one in front being
loaded with lumber and the one in the rear being a
Standard Oil wagon. When the conditions arose
which resulted in this accident the automobiles from
the north and the wagons from the south were ap-
proaching and about to pass each other on opposite
sides of the avenue they were traversing, near its in-
tersection with Smith avenue.

Plaintiff, a Polish boy between eight and nine years
of age, was riding on the rear end of the load of lum-
ber, having apparently climbed upon some projecting
boards, out of sight of the driver and those approach-
ing from the north. The lumber wagon and the oil
wagon were about 25 feet apart, their horses going
at a walk. When the heads of the horses drawing the
lumber wagon were approximately 20 feet south of
Smith avenue, their driver guided them diagonally
to the left, beginning to turn west on that thorough-
fare. Defendants' auto car was at that time some
60 to 70 feet to the north, beyond and approaching
Smith avenue. Observing that the lumber wagon was
about to cross his course, Wasmund, defendants'
driver, swung his car to the east, crossing over the
railway tracks diagonally to the left, or wrong, side
of the street for a person driving in the direction he
was taking, and then turned westerly to cut across
at the rear of the lumber wagon and in front of the
oil wagon, back to the right side of the street again.
As the lumber wagon was turning onto Smith avenue
and Wasmund was swinging his car towards its rear
to recross behind it, plaintiff alighted and ran out

towards the east curb, when the. lamp or spring on the right side of defendants' automobile struck and seriously injured him. Wasmund testified that he was but 10 or 12 feet away when he first saw the boy come from behind the wagon; that he then for the first time applied his brakes and could have stopped shortly after striking him, but the driver of the oil wagon motioned him to go ahead. If this be true, he could have easily checked down or stopped in time to allow the lumber wagon to pass before him onto Smith avenue. The driver of the auto car following him testified that they were running at a speed of 12 to 15 miles per hour, and that defendants' car did not go any slower or faster when it started to turn out behind the wagon and that he heard no horn blown. The driver of the oil wagon, who had driven automobiles, testified that the car which struck the boy was going, according to his judgment, 15 miles an hour, when it swung out to go across the street.

At the conclusion of the testimony a verdict was directed for defendants on the ground that plaintiff had failed to make out either a *prima facie* case of defendants' negligence or his own freedom from contributory negligence. Though the driver's own testimony tends to negative his claim that he could not check or stop his car in time to allow the wagon to safely pass in front of him, which compelled turning the car and passing to the left, and there is some conflict of testimony as to the speed at which he was running when he started to swing in behind the wagon he was meeting, those questions were clearly issues of fact, and there was ample evidence for the jury to consider, much of it undisputed, tending to show that his car struck the boy while on the wrong side of the street and of the vehicle it was passing, in violation of the law of the road and a city ordinance, near a crossing, with other following and passing convey-

ances in close proximity, without giving warning of its approach to those who might not be able to see or would not anticipate its passing upon that side, and while swinging in behind the loaded wagon at the rear of which the boy was riding, running the car at such a speed that he could not avoid any one who might come from behind the wagon, which he knew was just turning onto another street.

Irrespective of which side they pass and why, it is a settled rule of the road that:

"When two vehicles are passing it is the duty of each driver to look out for pedestrians suddenly appearing from behind the other vehicle." Babbitt's Law of Motor Vehicles, p. 286.

The undisputed evidence that defendants' car was on the wrong side of the road, passing the vehicle it was meeting on the left, alone raises a presumption of negligence on the part of its driver, and when such negligence is shown to have had a causal relation to the injury inflicted upon the plaintiff, as is the case here, a *prima facie* case of actionable negligence is presented. *Daniels* v. *Clegg*, 28 Mich. 32; *Tyler* v. *Nelson*, 109 Mich. 37 (66 N. W. 671) ; *Buxton* v. *Ainsworth*, 138 Mich. 532 (101 N. W. 817, 5 Am. & Eng. Ann. Cas. 146) ; *Bourne* v. *Whitman*, 209 Mass. 155 (95 N. E. 404, 35 L. R. A. [N. S.] 701). If, as claimed by defendants, there were justifying circumstances tending to show it necessary for the driver to take the left side of the road, the question was of fact for the jury and not of law for the court. If facts were shown warranting the driver in passing to the left, it then became his duty to observe that degree of caution and proceed with care at such reduced speed as was commensurate with the unusual conditions.

"One who violates the 'law of the road' by driving on the wrong side assumes the risk of such an experiment and is required to use greater care than if he had kept on the right side, * * * and if a col-

lision takes place in such circumstances, the presumption is against the party who is on the wrong side." *Angell* v. *Lewis,* 20 R. I. 391 (39 Atl. 521, 78 Am. St. Rep. 881).

That defendants' automobile was not exceeding the statutory speed limit of 15 miles per hour in non-business sections of a city by no means conclusively established freedom from negligence. The driver is required to operate a motor upon all public highways at a proper and reasonable rate of speed, with regard to the traffic and use of the highway under the existing conditions, to avoid so far as possible endangering the life or limb of any person or the safety of any property. The demanded care of a driver in operating a motor upon a public highway under varying conditions is thus well stated in *Thies* v. *Thomas* (Sup.), 77 N. Y. Supp. 276:

"No owner or operator of an automobile is, therefore, exempt from liability for a collision in a public street by simply showing that at the time of the accident he did not run at a rate of speed exceeding the limit allowed by law or the ordinances. * * * He still remains bound to anticipate that he may meet persons at any point in a public street, and he must keep a proper lookout for them, and keep his machine under such control as will enable him to avoid a collision with another person also using proper care and caution. If necessary, he must slow up, and even stop. No blowing of a horn or of a whistle, * * * without an attempt to slow the speed, is sufficient, if the circumstances at a given point demand that the speed should be slackened or the machine be stopped, and such a course is practicable" to him. "Every such operator of an automobile has the right to assume, * * * that every person whom he meets will also exercise ordinary care and caution according to the circumstances, and will not negligently or recklessly expose himself to danger, but, rather, make an attempt to avoid it."

If, as in this record, there is testimony showing or

tending to show, defendants' driver for any reason,
while running at a speed of 12 to 15 miles an hour,
swung his car to the left side of that narrow street
to pass on the wrong side an approaching team draw-
ing a loaded wagon, followed by another but 25 feet
behind, and then turned again to go diagonally across
the street through the narrow space between the two
horse-drawn, loaded vehicles without slackening his
speed, a jury would at least have supporting evidence
for a finding that he was not driving with that due
regard to the then traffic and use made of the high-
way demanded by the statute, to avoid endangering
"the life or limb of any person or the safety of any
property." Witness Pierson well expressed the men-
tal attitude of those who continue on at a dangerous
speed under such circumstances rather than take the
trouble of checking their cars to safe control in his
statement:

"I suppose he did as many of us often do on that
side; I often run on that side [the left] of the street
myself, and it is merely a game of chance."

If such game of chance only hazarded the safety of
the driver who indulged in the game, it might be re-
garded with complacency, and even condoned, but
such conduct is not in harmony with the rule of law
requiring due care for the safety of others, although
theoretically expiated, as too often occurs, by subse-
quent expressions of regret at a coroner's inquest over
an involuntary victim of the chance.

Neither can it be held under this testimony, viewed
in the light most favorable to plaintiff, that he is
shown, as a necessary legal conclusion, to have been
guilty of such contributory negligence as to demand
a directed verdict for defendants.

Children of his age and intelligence are held to have
an understanding of the ordinary dangers incident to
their playing upon or crossing public thoroughfares,

and the necessity of avoiding them. In this State and elsewhere it has been held, under the facts of the respective cases then being considered, that children injured as a result of suddenly running out to cross a public street or from behind a concealing conveyance, without care or thought to look for a passing automobile or other vehicle dangerously near and which they encountered, were guilty of such contributory negligence as would, in the absence of excusing circumstances, preclude recovery; but in the instant case it may well be contended that there were confusing and excusing circumstances for one of plaintiff's years, resulting from the driver of the lumber wagon starting to turn his team to the left and defendants' automobile at the same time coming swiftly down upon the wrong side of the street. Plaintiff's conduct is to be tested by his age, capacity, and understanding.

"The care and discretion to be used by children, and for which they must be held chargeable, must be proportioned to their age and capacity; and, while it must be ordinary care, it is not the ordinary care required of an adult under the same circumstances." *Wright v. Railway Co.,* 77 Mich. 123 (43 N. W. 765).

To what extent this boy knew and understood the rules of the road or reasoned upon the proper course which he should pursue to avoid danger is mere conjecture, but to the same extent he is held accountable under the law of contributory negligence .he must be credited with commensurate knowledge of the subject-matter. In seeking to reach the walk from near the center of the street he took the proper direction for safety, from his point of observation, according to the rules of the road, and would have been safe had defendants' driver kept on his proper side of the street, as plaintiff had a right to presume all vehicles from that direction would do. From where he was at the rear of the load of lumber he could watch in the direction vehicles on the east side of the street should come

from.   The only thing in that direction for him to avoid was the oil wagon following close behind, drawn by walking horses.   This first commanded his attention.   He could easily estimate that danger, and know that by moving quickly he would avoid it while passing to the walk across the east side of the street, which was otherwise safe, provided the rules of the road were observed by drivers of passing vehicles.

It cannot be said under these circumstances that a child of his age was, as a matter of law, negligent in not anticipating that defendants' automobile might come upon him without warning, running at a rapid rate upon the wrong side of the street, and then turn quickly diagonally across the way, between the two horse-drawn conveyances which were moving close together.   If he thought that far, he would have the right to assume that should necessity cause the driver to take the wrong side of the street in passing, a timely warning would be given and the car slowed down to immediate control.   Contributory negligence cannot be imputed to a plaintiff for failure to anticipate negligent acts of a defendant—no one need anticipate an unlawful act.   In *Gilbert* v. *Burque,* 72 N. H. 521 (57 Atl. 927), this thought is thus expressed:

"Where the position of the plaintiff who was run into by a vehicle going in the opposite direction was not dangerous, until the other traveler's act rendered it so, he is not chargeable with negligence as a matter of law because he did not see defendant or because he failed to anticipate that he would suddenly turn to the left, or because he did not instantly resort to some self-protecting expedient."

An important consideration carrying the question of negligence into the realm of facts for the jury is that this automobile was running on the wrong side of the street when the accident occurred.

Even in the case of adults, it is held that one is not barred from recovery when run into by an auto-

mobile while crossing a street, merely because of failure to look in each direction before starting to cross. *Lynch* v. *Rubber Co.*, 209 Mass. 16 (95 N. E. 400) ; *Dugan* v. *Lyon*, 41 Pa. Super. Ct. 52; *Bradley* v. *Jaeckel*, 65 Misc. Rep. 509, 119 N. Y. Supp. 1071. In the latter case the court said:

"Especially would it be unwarranted to hold, that when a person steps from the curb of a city street * * * he must look, not only in the direction from which vehicles may rightfully be traveling on that side of the street, but that he must look back, as well, in order to be sure that nothing is approaching from the rear on the side of the street prohibited by the rule of the road to vehicles traveling from that direction."

In recognizing the significance of defendants' automobile being upon the wrong side in case of accidents to children, it has even been held as a conclusion of law that a boy was not negligent in moving diagonally across a street without looking for automobiles which might come up behind him, but to do so must be on the wrong side of the street. *Burvant* v. *Wolfe*, 126 La. 787 (52 South. 1025, 29 L. R. A. [N. S.] 677).

Ordinarily, and particularly where the defendant is traveling upon the wrong side, it is for a jury to determine whether an infant struck by an automobile and the driver, both or either of them, exercise requisite care under the facts shown. *Turner* v. *Hall*, 74 N. J. Law, 214 (64 Atl. 1060) ; *Lynch* v. *Shearer*, 83 Conn. 73 (75 Atl. 88) ; *Bartley* v. *Marino* (Tex. Civ. App.), 158 S. W. 1156.

Plaintiff's age and intelligence clearly required, under the circumstances of this case, that his conduct should be measured and ascertained as a question of fact. It was for the jury to determine the double or mixed question of what was reasonably to be expected of an infant of his age, experience, and intelligence,

so far as shown, and whether, on the occasion of the accident, his conduct reached the standard of such reasonable requirements so determined.

The judgment is reversed and a new trial granted.

McALVAY, C. J., and BROOKE, KUHN, STONE, OSTRANDER, BIRD, and MOORE, JJ., concurred.