BARGER *v.* BISSELL.

1. AUTOMOBILES—EVIDENCE—NEGLIGENCE—INFANTS.
   Testimony in an action for the negligent injuring of an infant, of almost seven years of age, that she started to cross a paved avenue in the city of Detroit between two

streets, where there was no regular crossing, that she failed to look for approaching vehicles, that defendant's car, in charge of an experienced driver, was passing at a moderate rate of speed (from 7 to 9 miles per hour), and the driver who was watching for persons, etc., in the way blew his horn, got his feet on the brake and clutch, grabbed the emergency brake, and stopped as quickly as his car could stop, and turned to one side, as soon as she stepped into the street from behind a standing horse and wagon, that when the child went upon the pavement, she was only 20 to 25 feet in advance of the car, which defendant's testimony tended to show was less than that distance from her, *held*, insufficient to raise an inference of negligence on the part of the chauffeur.

2. SAME—CONTRIBUTORY NEGLIGENCE—ACTIONS.

Though the question of contributory negligence of a little girl, 6 years, 10 months of age, is in most cases for the jury, the conduct of the infant in unexpectedly attempting to cross a paved avenue, in the middle of the block, may be considered and has a proper bearing on the question whether defendant was guilty of negligence as a matter of law.

3. SAME—PLEADING—NEGLIGENCE.

In order to entitle the plaintiff to rely on the claim of negligence that the driver had no license to operate a car, the point must be alleged and relied upon in his declaration.

4. SAME.

In an action for personal injuries of a female infant under seven years of age, no presumption that the driver of the automobile that caused her injury was guilty of negligence is raised by mere proof of the accident.

Error to Wayne; Hally, J. Submitted June 9, 1915. (Docket No. 34.) Decided September 29, 1916.

Case by Orilia Barger, by next friend, against Edward W. Bissell for personal injuries. Judgment for plaintiff. Defendant brings error. Reversed.

*George H. Prentis* and *Harrison Geer,* for appellant.

*Dohany & Dohany,* for appellee.

Steere, J. On the afternoon of March 25, 1911, plaintiff, a child six years, ten months, and ten days of age, started hurriedly to cross Gratiot avenue, in the city of Detroit, from the north curb at a point between Townsend and Sheridan avenues, and was struck by the right fore wheel mud guard of defendant's passing automobile, receiving injuries, the exact nature of which is not made clear in this record, but for which she recovered in this action, brought by her mother, as next friend, a verdict and judgment for $975.

Under their assignments of error, defendant's counsel first and most seriously urge that plaintiff's testimony totally failed to make a *prima facie* case of negligence, and ask reversal on the following grounds, which were properly preserved for review by timely objections, requests, and exceptions before verdict, and by a subsequent motion to set the judgment aside:

"(1) There was no evidence showing or having any tendency to show negligence on the part of defendant.
"(2) The verdict is contrary to the great weight of evidence."

The automobile which struck plaintiff belonged to defendant, then riding in the back seat, and was driven by his chauffeur, Edmund De Meyer, an experienced driver, who was familiar with the rules of the road and with the car, having driven it and one of the same make, previously owned by defendant, for several years. It was a Peerless seven-passenger car, and at the time of the accident all seats were occupied. Defendant had taken some friends for a ride to Mt. Clemens that afternoon, and they were returning to their homes in Detroit when the accident occurred, at about 4:30 p. m. It was then yet broad daylight.

The declaration charges that while plaintiff, a healthy child seven years old, was lawfully upon the

street, in the exercise of due care and caution, without negligence on her part—

"defendant did carelessly, recklessly, and negligently cause his said motor vehicle to be operated as to lose control of the same, and in such a manner as to be unable to avoid colliding with plaintiff, and at a rate of speed far in excess of that permitted by law, and which was without any proper regard to the traffic and use of said street, said Gratiot avenue being then and there one of the principal business streets of the city of Detroit and in constant use for the passage of vehicles, horses, and persons thereon, and without giving plaintiff any warning whatever of the approach of said motor vehicle, and without any attempt to avoid colliding with plaintiff, who was then and there crossing said street, and without using any proper precaution whatever to avoid endangering the life and limb of plaintiff, and did then and there bodily collide with, strike, and knock plaintiff to and against the pavement of said street."

The evidence is undisputed that plaintiff stepped quickly off the curb on the side of the street the car was running, and started rapidly to cross just in front of and diagonally from this closely approaching car, with her head down, without looking, her back turned partially from it and from the direction vehicles should be expected upon that side of the street. It is manifest that she exercised no care at all, and, if an adult, she would clearly be barred from recovery by her own carelessness and negligence; but with a child of her age the question of contributory negligence precluding recovery, in case the defendant is shown guilty of negligence, is usually an issue of fact for the jury. In passing upon the legal questions raised here, the materiality of her conduct in thus suddenly coming upon the street close in front of a passing automobile, in the middle of a block, is its bearing upon the question of defendant's negligence.

The evidence is undisputed that defendant's automo-

bile was properly equipped, was upon the right side of the street, for the direction it was going, driven by an experienced driver, and running slowly, within the speed limit, the highest estimate given by any witness being from 7 to 9 miles an hour. In equipment, speed, and manner of operation, no statute or ordinance was being violated. The only negligence finally claimed and upon which the case went to the jury was that De Meyer could and should have stopped the car quicker than he did when plaintiff came upon the street in front of him.

The facts of the accident are in the main undisputed. There were in the car three men, three women, and a boy. The boy sat beside the driver. They were going west into Detroit on Gratiot avenue, which has upon it a double-track street car line. As they approached Townsend avenue, which crosses Gratiot, they stopped just back of an inbound street car which had stopped at the street crossing to receive and discharge passengers, waiting back of it at full stop until the street car proceeded on its run and was about half a block ahead, when the driver started the automobile again, manipulating in gradual sequence the different speed appliances, as was customary when starting. They had proceeded but a short distance west of Townsend avenue when the accident occurred, the distance being stated at from 50 to 75 feet, and, also, to near the middle of the block. The distance from the north curb to the north rail of the double street car track was about 16 feet, and, owing to rigs standing along the curb, it was necessary to run within 5 or 6 feet of the car track. In front of a grocery store, called "Michels," located towards the middle of the block on the north side of the street, was a high-topped grocery wagon to which was hitched a horse standing facing west, and just as the automobile, coming from the east, was about passing that point, plaintiff came out of the en-

trance way to a flat over the grocery to the curb, close ahead of the horse, and started quickly to cross the street right in front of the automobile, as before stated. That her appearance on the street as she came out from beyond the concealing wagon and horse was sudden and unexpected, causing alarm to all who saw it, and hasty action on the part of De Meyer, is shown, and not questioned. De Meyer repeatedly asserted in varying language, according to questions asked in direct and cross-examination, that he was driving slowly and watching; that he noticed the different persons and things nearby as he passed along, and recalled seeing plaintiff come out of the passageway onto the walk in front with no expectation she would start to cross the street without looking, but almost immediately she appeared again beyond the horse, and he at once did everything possible to stop the car and avoid it hitting her. He consecutively described what he saw and did in part as follows:

"She came out in front of the horse all at once and was on the machine. * * * I couldn't stop any quicker—couldn't do any better to not allow the girl to run into the machine. * * * Well, as soon as I saw the girl, I blew the horn; I got my two feet, one on the brake, and one on the clutch, and my left hand on the steering wheel. After I blew the horn, I grabbed the emergency brake, so that I stopped instantly; stopped so quick as any machine could stop; turned over the engine to get out of the road, and at the same time stopped everything."

He stopped so suddenly as to throw the passengers forward in the car, and all witnesses who saw the accident confirm his testimony as to his making a quick stop, swerving the car away from the child as he did so, describing it as "almost simultaneously" with her appearance, "quickly," "suddenly," "almost instantly," "very sudden," etc.

In charging the jury the court rightly said:

"There is no evidence from which the jury will have a right to find that the automobile at the time of the accident was being driven faster than the laws of Michigan and the ordinances of the city of Detroit allowed. If the chauffeur driving the car sounded the horn, put on the brake, and released the clutch as soon as he saw the child starting from the center of the street, that was exercising reasonable and proper care and precaution under the circumstances."

The record does not disclose what portion of the evidence was construed by the court as tending to establish defendant's negligence and raise an issue for the jury, but it is indicated from counsels' briefs that certain testimony of De Meyer himself, and of Mrs. Boss, called as a witness by plaintiff, was held to tend in that direction.

The farthest distance between plaintiff and the automobile at the time she started from the curb, given by any witness, was estimated by Mrs. Boss as about 20 or 25 feet. She was coming from the west towards the scene of the accident and in a position where she could see the approaching car back and outside of the grocery wagon, and also had an unobstructed view of plaintiff. Her testimony is that when she first saw the car it was 20 or 25 feet from plaintiff, who had just come off the curb, walking fast and turned partially away from it, "facing me more," and the car, after it struck her, ran, she thought, about 10 or 12 feet; but she negatives this as follows:

"When the automobile struck her she fell at once, and then the machine came to a sudden stop, right in front of her. * * * She was lying in front of the wheel, with her head just about in front of the wheel —the right front wheel."

She also stated that as it stopped it had turned to the left with one front wheel on the street car track, and she did not hear the horn or whistle blown. The latter negative testimony can have no probative force

against the abundant and positive affirmative evidence from numerous witnesses that the horn was sounded. That she in her position saw the child more distinctly and noticed she was about to cross the street sooner than those in the approaching automobile, whose view was cut off by the grocery wagon and horse standing at the curb, in front of which and towards Mrs. Boss plaintiff passed, is not proof that De Meyer could have seen her on the street sooner than he did. The claim that De Meyer's own testimony raises an inference of negligence is apparently based on extracts from his somewhat protracted and grilling cross-examination as to details, in which answers to repeated questions as to times and distances not always consistent are urged as indicating that the car ran further after he saw plaintiff in danger than the distance in which he stated he could stop the car at the speed he was driving. While he gave figures in response to insistent questions, though protesting, rather disrespectfully at times, that he could not with certainty, he also at times during the inquiry stated he made no measurements, that the figures he gave were "a guess," said, "everything so close together I can hardly tell how far," and consistently repeated that as soon as he saw plaintiff on the street he acted at once and did everything in his power to avoid hitting her, at the same time quickly turning the car to the left away from her and stopping it. No reasonable and legal inference of actionable negligence can be drawn from his account of the accident considered in its entirety.

The testimony of the five adult passengers, though varying in minor details according to what each particularly noticed, fully confirms his general account of prompt action and a quick stop after the child appeared in danger. To illustrate, Mr. John B. McKay, who sat on the right auxiliary seat just back of the driver, and

stated he "saw the whole thing from start to finish," testifies in part:

"We were going very slowly down the avenue. * * * I remember a grocery wagon being there, and the little girl came out with a dash from the sidewalk, and I utterly screamed—they all say it was·an awful scream— * * * and the man blew his horn. The little girl ran diagonally ·across. * * * She kept her head down all the way; rushed right into the car."

"Q. From the time you saw her leave·the sidewalk how soon did you—when you saw her going across the sidewalk—make· this outcry?

"A. Just immediately; I saw the thing was inevitable; I was afraid the little girl would be killed.

"Q. At the same time what did the chauffeur do?

"A. Blew his horn and twisted around his car. * * * The street was very narrow, * * * and almost at once as I said the accident happened. * ·* *

"Q. About how far did it go after it struck her?

"A. ·Oh, it stopped almost at once. * * * I don't think it went any feet at all."

Mrs. McKay, who sat in the rear seat at the right, and did not happen to be looking in that direction, possibly because more accustomed to it, does not give her husband's "awful scream" credit for the first alarm. She testified that they were going slowly along, "just crawling," the chauffeur occasionally sounding his horn, and she was noticing the people, many of whom were just coming from their work at'that time, when—

"suddenly there was this gong commenced tremendous noises, and I turned around to see what it was, and Mr. McKay gave a shout, and I looked over and saw this little girl, and she was just on the curbstone then, and she stepped right off the curb, and didn't seem to pay· the least attention to all of the noises that was around; her head was a little bent down; and after that I didn't see anything, because I thought she was killed. That is what I saw."

"Q. After you heard this gong and Mr. McKay making this exclamation?

"*A.* Then the car swerved a little and stopped suddenly. I myself didn't understand how we could stop so suddenly—stop so quickly. * * * What attracted my attention to the little girl was I first heard the gong in the car, the horn—when I first heard the horn. It tooted; it went very rapidly."

The controlling facts which took the case to the jury in *Winckowski* v. *Dodge,* 183 Mich. 303 (149 N. W. 1061), cited by plaintiff's counsel, are not in this case. Testimony in that case tended to show that the driver was running upon the left side of the road at a rate of 15 miles an hour, and struck a child coming from the rear of the wagon, while attempting without checking to cut across the road through a narrow passage between two vehicles he was meeting on the wrong side of the road. Had he driven upon the right side, the accident would not have occurred. The principle there involved is that "one who violates the law of the road by driving on the wrong side assumes the risk of such experiment." There was nothing experimental, unusual, or unlawful in the manner defendant's automobile was being driven when the accident occurred.

The contention is made that because De Meyer had no chauffeur's license he was presumptively guilty of negligence. Whatever might be thought of that proposition when properly pleaded, the declaration in this case contains no averment of negligence in that particular, and the question is not properly before the court.

Drivers upon highways are not held as insurers against accidents arising from negligence of children or their parents, and though in law such negligence in a particular case may not be a defense, as contributory negligence, for a driver also guilty of negligence, the fact of an accident does not establish liability or raise a presumption that the driver is negligent.

A careful consideration of the record in this case

leads to the conclusion that this unfortunate accident occurred as the result of an emergency on the highway which arose through no fault of the driver, and that his conduct, under the circumstances disclosed by the evidence, raises no inference of actionable negligence which makes out a *prima facie* case.

The judgment is reversed, and a new trial granted.

BROOKE, C. J., and KUHN, STONE, OSTRANDER, BIRD, and MOORE, JJ., concurred.

The late Justice MCALVAY took no part in this decision.