ROSS *v.* MICHIGAN MUTUAL AUTO INSURANCE CO.

1. HIGHWAYS AND STREETS — COLLISION — PRESUMPTION AGAINST PARTY ON WRONG SIDE OF ROAD.

In a collision between two automobiles driven on the public highway, one of which was on the wrong side of the road, the presumption is against the party on the wrong side, and the burden of proof is upon him to overcome said presumption.

2. INSURANCE—COLLISION—AUTOMOBILES—PARTY ON WRONG SIDE OF ROAD BARRED FROM RECOVERING UNDER POLICY.

In an action on a policy insuring an automobile against

As to violations of statute or ordinance regulating the movement of vehicles as affecting violator's right to recover for negligence, see notes in 41 L. R. A. (N. S.) 322; 12 A. L. R. 458.

On questions relating to automobile insurance, see notes in 6 A. L. R. 376; 13 A. L. R. 135; 19 A. L. R. 879.

damages received in a collision with another automobile, but providing that insurer should not be liable for damages, arising while the insured car was being operated in violation of law or contrary to the rules of the road, undisputed evidence that plaintiff, without any justifying circumstances, was driving on the wrong side of the road when the collision occurred, *held*, to bar his right to recover.

Error to Van Buren; Des Voignes (L. Burget), J. Submitted January 17, 1923. (Docket No. 121.) Decided October 1, 1923.

Assumpsit by Seward W. Ross against the Michigan Mutual Auto Insurance Company on a policy of insurance. Judgment for plaintiff. Defendant brings error. Reversed.

*Parm C. Gilbert* and *E. Bruce Laing*, for appellant.

*W. G. Bessey* and *W. J. Barnard*, for appellee.

STEERE, J. Plaintiff was an automobile dealer residing at South Haven, Michigan, and owned a Willys-Knight touring car which he had, on November 25, 1920, insured with defendant for a maximum amount of $1,000 against various kinds of loss, including "actual loss resulting by another automobile running into said automobile, not exceeding the total sum of $500." On November 29, 1920, while he was driving this car upon a public highway "over near Riverside" with a passenger and attempting to pass a Ford truck going in the same direction a collision occurred between his car and a Cadillac hearse-automobile coming from the opposite direction, resulting in his car being quite seriously injured, although he stated he managed to drive it home under its own power. He had it repaired and thereafter made claim to defendant in proper form under his insurance policy for damages caused by the collision, claimed to exceed the $500

limit of his policy on such loss.     Defendant refused to recognize his claim on the ground that he was operating his car in direct violation of the law of the State, which was the cause of the accident, and a violation of the conditions of his policy which forfeited his right to compensation under it.     He thereupon brought this action in the circuit court of Van Buren county, where he recovered a verdict and judgment for $475.

Among the terms and conditions of the policy it is provided that:

"There shall be no liability on the part of this company under this policy unless the driver shall comply with the State and municipal law where such automobile is being driven.     *     *     *

"This company shall not be liable hereunder for any claim arising while the automobile described herein is being operated in any race or speed contest, or while being operated by any one in violation of law or contrary to the rules of the road, or while drunk or intoxicated.     *     *     *

"Any violation of the conditions hereof by the assured shall constitute forfeiture of any rights of the assured hereunder."

Upon the trial the evidence consisted of plaintiff's testimony, and two letters written by him to defendant's agent which were introduced by the defense on his cross-examination.     A directed verdict was requested by defendant's counsel on the ground that plaintiff's own testimony showed that he was driving on his left of the highway in violation of law and contrary to the rules of the road, in such manner as to cause the accident, and thereby his right to compensation for loss under the terms of his policy was forfeited.

Defendant's other assignments of error group in legal effect to the above proposition, covering rulings during the trial admitting testimony of plaintiff in

explanation of his conduct under the stress of meeting an emergency, and the court's charge on that theory submitting to the jury the exculpating features of his conduct claimed by plaintiff.

The evidence is undisputed except as certain of plaintiff's testimony may tend to self-contradiction. The accident occurred near the intersection of two highways. Both were good, well-improved roads with finished surfaces 18 feet wide, the ground practically level with no ditches or other disturbing conditions at the roadsides to interfere with cars safely passing each other. The so-called main road extended directly north and south. The other joined it at an angle from the northeast, its course being southwest and northeast. Plaintiff was driving southwest on this road towards the main, or north and south road. Shortly before reaching the intersection he turned to the left side of the road to pass a Ford truck going in the same direction. He states that he was only going 10 or 12 miles an hour at the time, and when about 50 feet from the junction of the highways, traveling "neck and neck with the truck" and not gaining on it very fast, he first saw the hearse-car coming north on the main road about 75 feet away; that it was very nearly the same distance from the junction as they were and going about 20 miles an hour. On cross-examination he said:

"It was in the daytime, about 1:30 in the afternoon. I looked up and saw the hearse coming from the south, and my car moved in the route I drove it after I saw this hearse and up to the time we came together, probably 35 or 40 feet. After I saw the hearse I went a total distance of 35 or 40 feet on this curved course I was following, and during that time in making this distance I traveled so my car was over at this 18-inch curb at the time it was struck. That curb is on the east side of the north and south road.  *  *  *

"*Q.* Then what you testified to, and what you say, and the way you drove, was this: Immediately upon seeing this hearse coming you made a slight turn to the right?

"*A.* Yes, sir.

"*Q.* Then you immediately after that applied your brakes and turned to the left and continued to swing to the left until you went right into the place where the crash occurred?

"*A.* Yes, sir."

If the hearse-car which he first saw 75 feet away was going 20 miles an hour and he went 35 or 40 feet on his curved course before the collision, it would seem to follow that he also was going about 20 miles an hour; or accepting his statement of the speed at which he was driving, the car with which he collided could not have exceeded 10 or 12 miles an hour in covering its approximate half of the distance it was away when he first saw it. His view of the situation as expressed shortly after the accident in his letters to defendant's agent is as follows:

"South Haven, Mich., Dec. 3, 1920.
"Mich. Auto Ins. Co.,
"Mr. Curtis,

"*Dear Sir:* I had one awful bump with my Willys-Knight 20 model, and it sure makes me sick, as I had just got it and was on my way to deliver it, and I had only a few days ago sent in for an insurance on it. I think the 25th and the accident happened on the 29th. Now I am sending you a little sketch of the way it happened and while I was on the wrong side of the road, I was trying to avoid what I thought a sure collision if I cut in ahead of the approaching car, and had he continued straight down the road no accident would have happened, but he turned the same way as I was turning and when the cars struck we were against the curb. We were not either of us going at much speed or it would have been more serious.

"Now I have not done anything as to repairs on my car as yet, but it will be necessary to take it to the

factory I think.    I have written them and Mr. Dean, the owner of the Cadillac, holds me for his damages, and I guess the odds are all against me.    Trusting you will let me hear from you at once about what to do, etc., and bear with me in this trouble, as I sure am dead sick to think about it.

"Yours truly,
"S. W. Ross."

"South Haven, Mich., Dec. 17, 1920.
"M. M. A. I. Co.,
  "Mr. CURTIS,
  "*Dear Sir:* In regard to the repairs on my Willys-Knight car that I wrote you about, I have not got it completed yet on account of unable to get parts.

"Now Mr. Dean, the owner of the Cadillac, whom I collided with, is holding me for his damages and says he will send me the bill just as soon as the company has the work done. Now I wish to know just what course to take in paying his damages.    I have had no counsel on this as yet, but wish to know just what position and responsibility the company has in such a case, as this is the first one I have had.    While I was on the wrong side of the road I was clear over to the curb trying to get out of the way and had he kept his head and drove straight down the road, no accident would have happened, but the way it looked to me there by those who saw it and expressed their opinion, I was the one wholly to blame.

"Now, Mr. Curtis, please tell me just what position I am in and what to do.    For which I will thank you very much.

"Yours very truly,
"S. W. Ross."

The State laws of the road applicable here are found in section 4592 and chapter 89 of volume 1, Compiled Laws 1915, and were presumably known to the drivers of those automobiles.    The law is explicit as to passing and meeting vehicles.    When plaintiff desired to pass the Ford truck which he overtook it was his duty to make known his desire to the driver of the truck, by sounding his horn or otherwise, and it was then

the latter's duty to turn to the right of the center of the wrought portion of the highway, if not already there, and let him pass.    Presumptively this was done. Plaintiff then took a position at the left side of the truck at a speed, as he states, of but 10 or 12 miles an hour running "neck and neck" with it and "wasn't gaining on him very fast," when he "saw a big hearse coming down the center of the road," about 75 feet away. It was not unlawful for the approaching car traveling alone to be driven in the center of the highway provided it was seasonably turned to the right, in order to safely pass vehicles approaching in the opposite direction.    This the driver was presumed to and did do apparently in time to pass safely, as plaintiff describes the location of the collision, had not plaintiff after a misleading turn of his car to the right as though to pass the truck swung it back clear to the curb on his left.

When plaintiff first saw the approaching car, while he was driving on the left side of the road and truck at but 10 or 12 miles an hour, he had time and room on that broad, level highway to slow down and drop behind the truck he was trying to pass.    When the matter was fresh in his mind he wrote, "we were not either of us going at much speed or it would have been more serious."    There was no emergency except as he created it by continuing on in a double curve course which ended in front of the approaching car against the curb on its right side of the road.    There is no evidence that the driver of the hearse car violated the law of the road.    Plaintiff's main claim of justification is an expectation or fear that he would do so, while the facts are that in traveling half the 75 feet between them after first seen by plaintiff he was on his right side of the road near the curb when the collision occurred.

There were no justifying circumstances showing it

necessary for plaintiff to at that time take and keep the left side of the road while approaching an intersection, as his testimony shows that he did do.    He continued his course on the wrong side, assumed the risk, and a collision with the approaching car followed.

In such case the presumption is against the party on the wrong side of the road (*Winckowski* v. *Dodge*, 183 Mich. 303).    The burden of proof was upon him to overcome the presumption, while the undisputed facts in the case sustain it.    The undisputed facts show that the accident resulted while he was "driving in violation of law or contrary to the rules of the road," which by the terms of his policy forfeited his rights thereunder.

The judgment is reversed, with costs to defendant, and a new trial granted.

WIEST, C. J., and FELLOWS, McDONALD, CLARK, BIRD, SHARPE, and MOORE, JJ., concurred.