RUSSELL *v.* TWISS.

NEGLIGENCE—MOTOR VEHICLE LAW—DIRECTED VERDICT.

> In an action for damages to plaintiff's automobile caused by a collision with defendant's automobile on a public highway, where the evidence was undisputed that when the collision occurred defendant's car was on the left-hand side of the highway in violation of 1 Comp. Laws 1915, § 4814, as amended by Act No. 9, Pub. Acts 1919, the trial judge properly directed a verdict for plaintiff, leaving the question of damages to the jury.

Error to Ingham; Collingwood (Charles B.), J. Submitted June 6, 1923. (Docket No. 27.) Decided October 1, 1923.

Case by Claude V. Russell against Fred M. Twiss for damage to plaintiff's automobile. Judgment for plaintiff. Defendant brings error. Affirmed.

*Brown & Kelley,* for appellant.

*Seymour H. Person* (*Louis E. Howlett,* of counsel), for appellee.

MOORE, J. The plaintiff obtained a judgment of $1,500 against defendant for injuries to his Cadillac automobile, growing out of a collision with a Ford automobile owned by the defendant. The case is brought into this court by writ of error. The trial judge directed a verdict in favor of the plaintiff, leaving to the jury to fix the damages. He also directed the jury that defendant could not recover against the plaintiff in a cross action he had filed against the plaintiff. There is no claim that, if there was to be a judgment, the amount thereof is excessive.

---

On violation of statute or ordinance regulating movement of vehicles as affecting violator's right to recover for negligence, see notes in 41 L. R. A. (N. S.) 322; 12 A. L. R. 458.

The pivotal question is, Did the trial judge err in directing a verdict for the plaintiff? There is less conflict in the testimony than usually occurs in contested accident cases. In September, 1920, the plaintiff and his wife, and Mr. Charles Toms and his wife, were riding in a Cadillac car from Lansing on the way to Jackson. Mr. Toms was driving the car. He was an experienced driver, though he had not driven a Cadillac car very long. The day was fine. The road was wide and was very good, and was straight for a long distance. The automobile of the plaintiff was going south. The defendant was going north and had occasion to turn to the left and pass a motorcycle with a basket attached, which was stopped at the side of the highway for some adjustment. After doing so the defendant directed his car to the right side of the highway, but got so far over that he was afraid he would run into the ditch at the side of the road. In his effort to avoid doing this he directed his car to the left and evidently lost control of it for it ran diagonally across the traveled part of the road and struck the automobile of the plaintiff, with disastrous effect to the automobiles, and to the occupants of the Ford car. The Cadillac car at this time was at the extreme right-hand side of the road and its speed had been diminished to about 10 miles an hour.

The defendant in his cross-examination testified in part as follows:

"I was in the road headed north there; that was before I met the motorcycle that I first saw the Cadillac car. Possibly 250 feet or more south of the motorcycle. The Cadillac was south of the corners, more than half way down, I would think. I remember now; I saw the motorcycle first and I was on the right-hand side of the road, going north. I noticed it standing still. When I got up near the motorcycle and when I got about 200 feet from it, I saw the Cadillac car approaching; then I became conscious of

the fact that I was meeting the Cadillac car and also obliged to pass the motorcycle which was standing still and that it would take place at about the same point. I don't think I was confused at first.    I started to pass the motorcycle, I would say, within a hundred feet of it.    I was then somewhere near the center of the highway.    I cannot remember that I went over west of the center.

"Q. But at any rate, at that point you saw the Cadillac approaching?

"A. Yes, sir.

"Q. And how do you explain the fact that with a clear vision up there for half or three-quarters of a mile that you had not seen the Cadillac before?

"A. I don't know; I might have seen it, but I don't remember that I did.

"Q. What explanation have you got, if you have any, for not having seen it all the way up that incline?

"A. I don't know unless I might have been paying attention to my own car.    I didn't see it away up the road.

"Q. Then, after you observed that coming as it appeared to you, straight towards you, you made an effort to get out of the road over on your right-hand side?

"A. Yes, sir.

"Q. Do you think that the fact that you looked up and saw the Cadillac car approaching some two or three hundred feet away in a straight line inside of the highway, do you think that these facts all tended to confuse your mind?

"A. It might have startled me some, and then to get out of the way, I undertook to get over on the right side of the road.

"Q. To turn your car over on the right side of the road, what did you do?

"A. I turned the steering wheel so that it would turn that way.

"Q. There wasn't any way to get your car over there except by operating the steering wheel?

"A. No, sir.

"Q. And in all of these movements of the car back and forth across the road, it went under your control of the steering gear?

"A. Yes, sir.    There wasn't anything about the machine that gave way that I know of.

"*Q.* But the fact that it went back and forth across the highway was due to the fact that you operated the steering gear and propelled it in that direction?

"*A.* Yes, sir.

"*Q.* The fact that it was on the wrong side of the road when this collision occurred was due to the fact that you put it over there by operating the steering wheel, is that right?

"*A.* I think so.

"*Q.* Now, when you got around the motorcycle and saw the Cadillac approaching and you tried to get over on your side of the road, you ran up almost into the ditch on the east side of the road?

"*A.* Yes, sir.

"*Q.* Well, as you look at it now, don't you think that you pulled the steering gear a little too far around and threw the car over to the ditch too far?

"*A.* Yes, it would seem that way, yes, sir.

"*Q.* And when you discovered you had done it, you suddenly pulled the steering wheel the other way.

"*A.* Yes, sir, tried to straighten—

"*Q.* As you look at it now, you conclude that you pulled it too far?

"*A.* Yes, sir. The car shot clear over to the left side of the road; I don't think I did anything else with any of the other operating apparatus of the car except to move the steering wheel. I did not have an emergency brake; there is only one brake on the Ford and that is the foot brake. I don't think I used them. I thought I had room to get by. At the rate of speed I was driving when I went around that motorcycle, I could have stopped my car by operating the brake, within 50 feet I think. I think I diagonalled across that road for 60 feet or more.

"*Q.* If you had put your foot on that brake at the rate of speed you were going you would have stopped that car within 10 feet from the time it struck that Cadillac, wouldn't you?

"*A.* No, I don't think so.

"*Q.* Now then, if you had applied the brake over when you were nearer the ditch, you would have stopped the car within 10 feet before it struck the Cadillac wouldn't you?

"*A.* No, not necessarily.

"*Q.* Are my figures wrong?

"*A.* The Cadillac would have come just the same notwithstanding what I had done with my brake.

"*Q.* My conclusion is not right about that?

"*A.* Not the way you stated; no, sir.

"*Q.* But at any rate you did not apply any brake at all, did you?

"*A.* I don't think so; I don't remember.

"*Q.* What did you do to avoid the accident?

"*A.* I tried to keep my car, I tried to get my car and keep it on my side of the road.

"*Q.* But you failed to do so?

"*A.* I failed to do it.

"*Q.* You did not cut off the supply of gas in any way?

"*A.* I don't remember about that.

"*Q.* And you did not apply the brake?

"*A.* I don't remember of applying the brake.

"*Q.* You simply did nothing except operate the steering wheel and that you did wrongfully?

"*A.* The outcome would tend to show that I did.

"*Q.* If you had stayed on your side of the road, this accident would not have happened would it?

"*A.* I don't know.

"*Q.* What is your best judgment about it?

"*A.* I won't say whether it would or not; I don't think it would.

"*Q.* What is your best judgment about it as you look at it now, what is your best judgment?

"*A.* Possibly not.

"*Q.* Had you applied your brake when you were over by the ditch on the east side, to your car, the accident would not have happened, would it?

"*A.* I don't know as to that.

"*Q.* What is your judgment about it as you look at it now?

"*A.* My judgment is that it might not.

"*Q.* You did not lessen the speed of the car at any point, did you, that is, I mean from the time you started to go around the motorcycle up to the time of the collision, you did not lessen the speed of your car?

"*A.* I don't think so.

"*Q.* Had you lessened the speed slightly the Cadillac would have got by, wouldn't it?

"*A.* I could not say.

"*Q.* Well, you struck the Cadillac when your car was running according to your judgment about 20 miles an hour?

"*A.* Yes, sir.  I don't know whether it cut the tire or the left front wheel clear through the rim or not. I did not see the tire that was cut after the accident at all.  I bought a new tire for my left wheel.  I didn't see the car until after it was repaired."

Redirect-examination.

"By Mr. Kelley: I have high blood pressure and hardening of the arteries.  It is difficult for me to concentrate.  I am quite nervous and a considerable of the time I have done my work only intermittently."

Section 4814, 1 Comp. Laws 1915, as amended by Act No. 9, Pub. Acts 1919 (Comp. Laws Supp. 1922, § 4814), provides:

"Whenever a person operating a motor vehicle shall meet on the highway  *  *  *  any other vehicle *  *  *  the person operating such motor vehicle shall seasonably turn the same to the right of the center of the traveled portion of the highway."  *  *  *

The testimony of Mr. Twiss establishes very clearly that the provisions of the statute were not obeyed by him.  The questions involved have been frequently before this court.  Some of the cases are *Winckowski* v. *Dodge,* 183 Mich. 303; *Black* v. *Parke-Davis & Co.,* 211 Mich. 274; *Marsh* v. *Burnham,* 211 Mich. 675. The case is a very regrettable one, but we are compelled to say that upon this record the action of the trial judge was quite right.

The judgment is affirmed, with costs to the appellee.

WIEST, C. J., and FELLOWS, McDONALD, CLARK, BIRD, SHARPE, and STEERE, JJ., concurred.