BARNES v. BECK.

1. Appeal and Error—Nonjury Cases.
    Nonjury actions at law are not reviewed by the Supreme Court *de novo* and it takes such a glaring error by the trial court to afford occasion for reversal on a finding of fact in such a case that it can be said that the judgment, as a matter of law, is contrary to the clear preponderance of the evidence (Court Rule No 64 [1945]).

2. Trial—Questions of Fact.
    Questions of fact in an action at law should be determined in the trial court (Court Rule No 64 [1945]).

References for Points in Headnotes
3 Am Jur, Appeal and Error §§ 817, 895.

3. CONTRACTS—BUILDINGS—CONSTRUCTION PRICE—QUESTION OF FACT
   —EVIDENCE.
   Evidence presented by building contractor against owners of
   home he had built *held*, to support trial court's finding of fact
   that the agreed construction price was $17,000, exclusive of
   painting and decorating, and that plaintiff should not recover
   claimed balance of $6,450.86, notwithstanding there was evi-
   dence to the contrary.

Appeal from Antrim; Brown (Charles L.), J.
Submitted April 4, 1957. (Docket No. 35, Calendar
No. 47,078.) Decided May 17, 1957.

Action by Bryce N. Barnes against Lawrence H.
Beck and Edith Beck for sums claimed due on oral
building contract. Judgment for defendants. Plain-
tiff appeals. Affirmed.

*Harry T. Cook* (*Stuart D. Hubbell,* of counsel),
for plaintiff.

*James R. Zerafa,* for defendants.

BLACK, J. This case is an instance of what is
getting to be chronic litigation between home owner
and contractor. The one invariably claims that the
contractor agreed to build a house on his lot for so
much money, whereas the other usually insists that
the agreed arrangement was that of "cost plus" con-
struction. The parties in cases of such nature rarely
reduce their commitments to writing. When they do,
apparently inevitable controversies respecting ex-
tras and subsequent modifications—occasioned by
claimed oral agreement from time to time as work
progresses—make up a congeries of trouble for our
trial courts.

In the case before us there was no written agree-
ment. The decisive questions before the trial court
were (a) whether the original agreement was that

of a fixed price or otherwise and (b) whether the original agreement, whatever its determined nature, was agreeably modified so as to provide plaintiff with a right of recovery as claimed by him.

Plaintiff Barnes is a building contractor whose principal business is carried on in Antrim county. He operates a lumber yard at Eastport. Originally, and with satisfaction all around, he built a summer cottage for defendants Beck on Torch lake. After the cottage was finished, and after the Becks had started to use it, Mrs. Beck produced a set of plans, known in the record as the "Better Homes & Gardens Five-Star plan," and opened negotiations toward construction by plaintiff of a permanent home for defendants on their building lot in Birmingham. According to plaintiff, the agreement finally reached between the parties was that he would furnish materials (at wholesale cost) and labor for construction of the house according to such plans and that the defendants would pay him for his "out-of-pocket expense for these materials and labor in addition to an hourly wage to be paid plaintiff for his own work on the job."

Plaintiff says that the total cost of such labor and materials, so furnished by him, was $17,450.86; that defendants have paid him $11,000 only, and that he is entitled to recover from defendants a computed balance of $6,450.86. Defendants insist that plaintiff agreed to build the home according to such plans for a total sum of $17,000 "exclusive of painting and decorating," and that they have paid plaintiff considerably more than what they claim was the agreed contract price.

Construction was duly commenced. The usual disagreements began to appear as estimates and costs parted company according to dismaying postwar building-trade developments. When the job was near completion, financing of a substantial part

of the cost of construction was accomplished through a mortgage loan made by the Equitable Life Assurance Society of the United States. To complete the loan, it was necessary that a release and certificate of payment form be signed by the general contractor. Plaintiff executed such a release and certificate but claims that it was conditionally delivered by express agreement of the parties, without prejudice to his present claim. To the contrary, defendants insist that its recitals were correct in fact and that there was no conditional or special agreement with respect thereto.

The trial judge found (the case having been tried to the court) that the original agreement between the parties was that of construction of the home for an agreed price of $17,000, exclusive of painting and decorating; that the defendants had paid plaintiff a total of $11,100; that defendants had paid $5,107.-99 for building materials plaintiff obligated himself to provide as a part of the agreed job; that they had paid various subcontractors of plaintiff a total of $5,661.17, and that they had accordingly paid plaintiff, for the job so undertaken, a total of $21,869.16. On such finding—recorded later in opinion denying new trial*—the trial judge entered judgment of no cause. Plaintiff reviews in pursuance of Court Rule No 64 (1945) and presents the usual question on review of law cases tried without a jury, *viz.,* "That the judgment is against the preponderance of the evidence."

*First:* The tendency in recent years toward waiver of trial by jury, worthy though it may be in the name of prompt submission and determination of a law case, points up an apparently continued misconception of our function when nonjury cases arrive for

---

* We accept the belated finding for present purposes (*Morley Brothers, Inc.,* v. *F. W. Patterson Construction Co.,* 266 Mich 52; *Irwin* v. *Williamson Candy Co.,* 268 Mich 100).

appraisal under Court Rule No 64. The drumfire of jury arguments* delivered here, orally and in brief on review of such cases, suggests that we are not getting through to counsel with previous declarations that we do not hear and consider Rule No 64 cases *de novo* (*Jones* v. *Eastern Michigan Motorbuses*, 287 Mich 619; *Schneider* v. *Pomerville*, 348 Mich 49) and that the trier of facts is in better position than we are to judge the right and wrong of human memory and the "demeanor-clues" witnesses personally exhibit on the witness stand.

Modern science extends an apt illustration. The televised delivery lends a great deal more to the accuracy of belief or disbelief than does the invisible yet audible radio speech of the same personality. The latter in turn is relevantly more aidful than the comparably tabescent printed record of utterance. We noted, in *In re Calhoun Estate*, 346 Mich 227, 232, 233, that the best and most accurate record of oral testimony "is like a dehydrated peach; it has

---

* By the expression "jury argument" we refer, of course, to the required nature of summations before petit juries and trial judges distinguished from arguments of points of law in appellate courts. Each has its place. One is made in the forum where the credibility of witnesses is weighed and disputed questions of fact are settled. The other is presented upon a kiln-dried record of proceedings at law, brought to a higher court for determination of questions of law. Thus, whether a judgment is contrary to the clear preponderance of the evidence "is a question of law rather than one of fact" (*Jones* v. *Eastern Michigan Motorbuses*, 287 Mich 619, at page 648), and court and counsel in discussion thereof should treat it so. Manifestly, and in the course of such discussion, suggestion that we should accept the testimony of this or that witness as against opposing testimony the trier of facts has accepted, or that an emphasized document or circumstance should be accorded evidentiary superiority contrary to proof-supported finding below, or that a selected inference drawn from the record in opposition to such finding is the key to correct answer of the assignment of error before us; all these disclose fundamental misunderstanding of our relevant province. In short, it takes convincing proof (as in *Schneider* v. *Pomerville*, 348 Mich 49) that the judicial trier of facts has overlooked or ignored and thus did not test crucial testimony to warrant reversal or remand by force of an assignment addressed to clear preponderance. Indeed, to sustain such an assignment, we must be shown what is rightly known as a "glaring error" (*Besser Manufacturing Co.* v. *United States*, 343 US 444, 448 [72 S Ct 838, 96 L ed 1063]).

neither the substance nor the flavor of the peach before it was dried," and in *Hayes Construction Company* v. *Silverthorn,* 343 Mich 421, 428, 429, that:

"The trier of the facts in such a matter has an inestimable advantage over the appellate tribunal. The hesitant word and the averted glance stand on a parity, on the printed page before us, with the positive assertion and the forthright expression.* Not so in the mind and conscience of the *nisi prius* judge. He makes his appraisal of truth or falsity upon an evaluation of all the elements visible and audible, and while cases may occur in which his disregard for the clear preponderance is manifest even in these chambers, this case is not one of them."

We write here, not alone for this case of Barnes but for the increasing numbers of cases brought to us under said Rule No 64. The place for powered emphasis on what each party claims *should be* the facts is in our trial courts. When the facts are found there and review of the judgment takes place, we consider alleged errors of law only and do not, as has been urged (see *In re Hoffman's Estate,* 183 Mich 67, and discussion of the 1938 committee report of American Bar Association,† pp 639, 640, of report of *Jones* v. *Eastern Michigan Motorbuses, supra*), proceed as in equity cases.

*Second:* Turning now to the case before us:

We have previously noted the general findings of the trial judge. He was influenced in arriving at decision that plaintiff should not recover by defendant Lawrence H. Beck's testimony that the agreed

---

* Mr. Justice Burton has the right expression for that which is before the trier of facts. He calls it "the living record" and points out that the trial judge's appraisal of such record is entitled to proportionately more reliance, rather than less, the farther the reviewing court is removed from the scene of trial (*Von Moltke* v. *Gillies,* 332 US 708, 740 [68 S Ct 316, 92 L ed 309]).

† The joint committee (judicial conference and State bar) on Michigan procedural revision is presently considering a somewhat similar report, not as yet published.

construction price was $17,000 (exclusive of painting and decorating); by an admission of plaintiff "that he was paid up to date" when plastering of the home was completed; by testimony that plaintiff regularly told defendant Lawrence H. Beck, as work progressed, that "we are right about where we ought to be" (with respect to cost of construction); by conclusion that "it is inconceivable to this court that plaintiff could possibly have expended $9,776.99 * * * for materials after all the plastering was completed;" by the fact of plaintiff's having signed the mentioned release and certificate (reciting that "all labor and material, except labor of bricklayer, has been paid in full"), and finally (with respect to the original agreement of the parties) by plaintiff's testimony, when denying he had quoted a price of $17,000 to defendants, that he "couldn't recall whether he mentioned price at all."

The record discloses arguable testimony and inference supporting and opposing Judge Brown's findings as outlined. We are consequently obligated to rule that the judgment entered on such findings passes muster as against plaintiff's challenge.

Affirmed, with costs to defendants.

Smith, Edwards, Voelker, and Carr, JJ., concurred with Black, J.

Dethmers, C. J., and Sharpe and Kelly, JJ., concurred in the result.