VANDERVELT *v.* MATHER.

1. AUTOMOBILES—NEGLIGENCE—QUESTION FOR JURY—PEDESTRIANS—TRAFFIC LIGHT.
   Issue of defendant westbound motorist's negligence was for jury in southbound pedestrian's action for injuries sustained when hit at 12:45 a.m. on west crosswalk near north streetcar tracks in middle of street, where there was testimony that defendant had crossed north and south street against a traffic light.

2. SAME—PEDESTRIANS—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY—TRAFFIC LIGHT.
   Issue of contributory negligence of plaintiff southbound pedestrian who was hit at 12:45 a.m. on west crosswalk near north streetcar tracks in middle of street by westbound car driven by defendant against a traffic light was for jury, where evidence shows it was raining, that plaintiff, after making observations as to traffic, had started to cross with the traffic light, since plaintiff is not required to anticipate an unlawful act.

DETHMERS, C. J., dissenting.

Appeal from Wayne; O'Hara (Chester P.), J. Submitted April 15, 1958. (Docket No. 72, Calendar No. 47,305.) Decided June 12, 1958.

Case by Joseph Vandervelt against Norman J. Mather for personal injuries sustained when struck by automobile. Directed verdict and judgment for defendant. Plaintiff appeals. Reversed and remanded.

---

\* Continued from Volume 352.

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 5A Am Jur, Automobiles and Highway Traffic § 1028.
[2] 5A Am Jur, Automobiles and Highway Traffic § 747.

*Goodman, Crockett, Eden & Robb* (*George W. Crockett, Jr.,* and *Dean A. Robb,* of counsel), for plaintiff.

*Konrad D. Kohl* (*John R. Secrest,* of counsel), for defendant.

CARR, J. While attempting to cross Jefferson avenue on the west crosswalk of Woodward avenue, in the city of Detroit, plaintiff was struck and injured by an automobile driven by the defendant. The accident happened on May 24, 1952, at approximately 12:45 a.m. In his declaration plaintiff alleged that defendant, while driving in a westerly direction on East Jefferson, disregarded traffic control signals and proceeded through the intersection of said street with Woodward against a red light. The pleading further set forth, among other claims of negligence, that defendant failed to make proper observations and to have his automobile under control. The answer filed by defendant averred that the accident resulted from the negligence of plaintiff in proceeding into the path of defendant's vehicle in such manner as to render it impossible to avoid the accident. The pretrial statement sets forth the material claims of the respective parties substantially as averred in their pleadings.

On the trial of the cause in circuit court before a jury plaintiff testified with reference to the occurrence of the accident and his injuries received therein. The testimony of other witnesses was also introduced for the purpose of corroborating his claims. At the conclusion of his proofs relating to the accident, counsel for defendant moved for a directed verdict alleging that said proofs were not sufficient to support a conclusion that defendant was guilty of negligence as charged in the declaration, or to justify a finding that plaintiff was not guilty

of contributory negligence barring recovery. The motion was granted. Counsel for plaintiff then moved for a new trial on the ground that the court erred in directing a verdict in favor of defendant, and that new evidence of a material nature had been discovered. The motion was denied. Plaintiff has appealed from the judgment entered.

The issue presented on the appeal is whether plaintiff's proofs, construed as strongly as reasonably possible in his favor, entitled him to have the questions of negligence, proximate cause, and contributory negligence submitted to the jury for determination. As a witness in his own behalf plaintiff claimed that at the time of the accident he was on his way home, intending to cross Jefferson avenue on the west side of Woodward avenue to a safety zone where he might board a streetcar. As he approached Jefferson he noted that the traffic light showed red for Woodward traffic. Accordingly he waited until the light changed to green, and then undertook to cross. The following excerpt from his testimony fairly indicates the substance of his claims with reference to the facts:

"*Q.* Now, after you left the northwest curb, what did you do then?

"*A.* Well, I stepped off the curb, and I looked to my left to see if any cars were making a right-hand turn. There weren't any, and at the same time I noticed 2 cars already had stopped, one right along side the curb and one right along side that as we proceeded across the street.

"*Q.* Then what did you do, Mr. Vandervelt?

"*A.* Well, of course, I took 4 or 5 steps, and then I watched where I was going, of course, and then as we took another few steps we noticed we was nearing the tracks. Then I looked to my right to see if there were streetcars coming from Griswold avenue, and at that time somebody hollered 'Look out.' So I swung my head to the left again. I ob-

served the green light, and I was so surprised to see this car almost on top of me.

"*Q.* How far away was the car when you first saw it?

"*A.* It wasn't very far. It wasn't only a few feet from me.

"*Q.* Then what happened next, Mr. Vandervelt?

"*A.* Well, I got hit, and I tried to pull back, but I couldn't make it. I got hit. Then I rolled, and, of course, I landed about one-quarter length of the street away. * * *

"*Q.* What did you do, sir, when you first saw the lights turn green in your favor?

"*A.* Well, when I first saw the light change from red to green, why, I looked to my left to see if any right-hand turns were being made by cars because, you know, they have the right-of-way, too, there. So there wasn't any coming, so I started across the street, and at the same time I was looking to my left. I. seen 2 cars standing there already had stopped across the street.

"*Q.* That is, before you stepped off or at the time you stepped off the curb, you made this observation?

"*A.* I stepped off the curb and looked to the left at the same time.

"*Q.* Then, is it correct to say you made this observation to which you have just referred at the time you were taking your first step off of the curb at the northwest corner of this intersection and as you were crossing Jefferson avenue, is that correct?

"*A.* That is right.

"*Q.* Then, what did you do, Mr. Vandervelt?

"*A.* Why, we continued our way across the street, and as, of course, I was watching where I was walking, and as we neared the main streetcar track, that is, the main westbound streetcar tracks, why, I looked to my right to see if any cars were coming, that is, the streetcars, because I was going to the streetcar to go home, and the safety zone is right beyond that. As we neared the tracks, I looked to my right to see if any cars were coming around the

corner. There wasn't any coming, and at the same time someone hollered 'Look out.' So as I swung my head around, I observed the green light. Then I observed this car to my left, and it was almost on top of me, and my eyes flashed on the windshield and part of the hood.

"*Q.* When you heard this statement or shout of 'Look out'—let me correct that. Immediately before you heard this shout, tell us, if you will, sir, were you looking south—that would be ahead of you—or were you still looking right to observe any streetcars that might have been eastbound, as I understand your testimony, but I don't —

"*A.* (Interposing) Well, you see, I was looking to my right to see if a car was coming from around the corner because the cars came around from Griswold avenue.

"*Q.* Is that when you heard this 'Look out'?

"*A.* Well, I had already looked when I heard somebody holler 'Look out.' Just about the same time. Then I swung my head over to see what was going on. As I swung my head over, my eyes observed the green light. It went around further, and I observed the car, and it was almost on top of me. I tried to get away, but I couldn't. I pulled myself back, but I was hit."

Plaintiff's witness Edward Darlak was walking directly behind plaintiff as the latter started to cross Jefferson avenue, and corroborated the claim as to the condition of the light when the parties were at the northwest corner of the intersection. He stated that when the plaintiff left the curb the light was green for north and south traffic. He noted the approach of defendant's car and shouted "Look out." Apparently the warning came too late. Plaintiff and a lady with whom he was walking were struck and thrown to the right. This witness also claimed that he noted the color of the light at the time of the impact and that it was green.

Miss Adelle Cote who was crossing the street with plaintiff on the occasion in question, after stating that she was at the northwest corner of the intersection of Woodward and Jefferson, testified, in part, as follows:

"Q. What condition was the traffic light in at that time?

"A. Red.

"Q. And that was red for what traffic?

"A. For the traffic on Woodward, the north and south traffic.

"Q. In other words, you were going in what direction?

"A. I was going south.

"Q. And the traffic light was red for you?

"A. Yes.

"Q. Now, could you tell us how long you waited at the traffic light?

"A. I waited—well, for the length of the light anyway, whether that takes about a minute or so.

"Q. You waited until the light turned?

"A. Uh-huh. It was a good length of time. It was quite a long light.

"Q. And what happened after the light turned? What color did the light turn to?

"A. It turned green.

"Q. Then what did you do after that?

"A. I stepped off the street and was walking right next to Mr. Vandervelt.

"Q. On which side of Mr. Vandervelt were you walking?

"A. I was on his right."

The testimony of the witnesses is sufficient to justify an inference that defendant was proceeding in a westerly direction on Jefferson avenue, that he struck plaintiff in proximity to the north streetcar tracks on said street, that the controlling traffic light was green for southbound traffic on Woodward, and that defendant entered the intersection against a red

light. Under the proofs, construed as before indicated, the issue as to defendant's negligence was one of fact for determination by the jury.

The more serious question is whether the proofs offered were sufficient to justify a finding that plaintiff was not guilty of contributory negligence constituting a proximate cause of the accident. In other words, did he sustain the burden of proof resting on him in this respect? Accepting his testimony as correct, he duly made observations with reference to traffic and control signals as he started across Jefferson. It was raining at the time but it does not appear that he carried his umbrella in such a manner as to obscure his vision in any direction. As he approached the streetcar tracks he looked to his right, as he claimed, being concerned in the possible approach of a streetcar. His attention was directed to the approaching automobile by witness Darlak, but apparently it was too late then to avoid being struck. Under the circumstances suggested, we conclude that the proofs submitted by plaintiff were sufficient to entitle him to have the question of his contributory negligence submitted to the jury under instructions by the court as to his duty to exercise care for his own safety. It may not be said that the testimony introduced established contributory negligence as a matter of law.

As above noted, the testimony relied on by plaintiff indicates that defendant undertook to drive through the intersection against a red light. In *Winckowski* v. *Dodge,* 183 Mich 303, 312, it was said:

"Contributory negligence cannot be imputed to a plaintiff for failure to anticipate negligent acts of a defendant—no one need anticipate an unlawful act."

Such statement has been repeatedly quoted in subsequent decisions. Among cases in accord therewith are: *Guina* v. *Harrod,* 275 Mich 393; *Suarez* v.

*Katon,* 299 Mich 38; *White* v. *Herpolsheimer Company,* 327 Mich 462 (26 ALR2d 667); *Knoellinger* v. *Hensler,* 331 Mich 197. Under the testimony in the case the matter of plaintiff's contributory negligence presents a question concerning which reasonable men might reach different conclusions. Such being the case said question is factual in nature and should be disposed of accordingly. *Nezworski* v. *Mazanec,* 301 Mich 43; *Staunton* v. *City of Detroit,* 329 Mich 516.

The judgment entered in defendant's favor on the directed verdict is reversed and the cause remanded for a new trial, with costs to appellant.

KELLY, SMITH, BLACK, EDWARDS, VOELKER, and KAVANAGH, JJ., concurred with CARR, J.

DETHMERS, C. J. (*dissenting*). For reasons stated in my opinion in *McKinney* v. *Yelavich,* 352 Mich 687, decided this day, and in the cases cited therein, plaintiff, in my view, should be held guilty of contributory negligence as a matter of law for failure to maintain a reasonable and proper lookout and to see defendant's approaching automobile before it was too late to avoid the accident. Accordingly, the directed verdict of no cause for action was proper and judgment thereon for defendant should be affirmed, with costs to defendant.