COUSINO *v.* BRISKEY.

AUTOMOBILES—INTERSECTION—SPEED—EQUALLY DIVIDED COURT.
    Judgment in nonjury case for westbound plaintiff and her in-
    surer for injuries sustained and damages incurred at a vir-
    tually blind intersection of rural roads, uncontrolled by sign
    or signal as to right-of-way, when car collided with defendants'
    northbound car under evidence showing both cars were travel-
    ing in excess of 40 miles an hour, is affirmed by an equally
    divided court (CLS 1956, § 257.649).

Appeal from Monroe; Weipert, Jr. (William J.),
J. Submitted April 12, 1961. (Docket Nos. 62, 63,
64, Calendar Nos. 48,876, 48,877, 48,974.) Decided
March 16, 1962. Rehearing denied May 17, 1962.

Case by Ruth Ann Cousino against Arthur Briskey
and Melvin Eugene Briskey for personal injuries
sustained in automobile collision June 21, 1958.
Similar action by Alfred R. Cousino for property
damage and medical expense, with American Hard-
ware Mutual Insurance Company, subrogee, later
added as party plaintiff. Judgments for plaintiffs.
Defendants appeal from order allowing subrogee to
be joined and from judgments entered. Affirmed by
an equally divided court.

---

* Continued from Volume 365.

REFERENCES FOR POINTS IN HEADNOTE
3 Am Jur, Appeal and Error § 1160.

(1)

*Ready & Braunlich,* for plaintiffs Cousino.

*Weipert & Costello,* for plaintiff American Hardware Mutual Insurance Company.

*James J. Kelley, Jr.,* for defendants.

SOURIS, J. *(for reversal).* Two automobiles approached a virtually blind rural intersection at speeds in excess of 40 miles per hour. The intersection was uncontrolled by any sign or signal indicating right-of-way. Neither driver applied brakes prior to the collision. The automobiles met in the intersection, with plaintiffs' car striking defendants' car at about the right rear wheel. Trial was to a circuit judge without a jury and resulted in judgments for plaintiffs. Among other errors claimed to have been committed, defendants claim that plaintiff driver was guilty of contributory negligence and the trial judge's finding to the contrary was against the great weight of the evidence.

We agree. CLS 1956, § 257.649 (Stat Ann 1957 Cum Supp § 9.2349), which gave precedence to the plaintiff driver on the right, did not warrant her crossing a blind intersection at unslackened speed under the circumstances disclosed by this record. Her own testimony, elicited both on direct and cross-examination, summarized and quoted below, compels reversal.

Mr. Justice BLACK has written for affirmance. As this Court recently said in *Schneider* v. *Pomerville,* 348 Mich 49, at p 55, "When evidence is appraised to determine clear preponderance thereof, forceful argument each way subsists to the last and usually survives final judgment," a circumstance from which we would expect not infrequently to encounter "forceful argument each way" even in the opinions rendering final judgment. However, no such "force-

ful argument" is here made in the opinion for affirmance. It does not consider the evidence of plaintiff driver's contributory negligence, an issue properly pleaded by defendants as required by section 3a of Court Rule No 23 (1945)* and, in our view, proved by them by a clear preponderance of the evidence. The opinion for affirmance reserves its evidentiary comment only for the proofs relating to defendant driver's unquestioned negligence. Its sharp shafts are, instead, aimed straight at the heart of our undertaking—the right of this Court to review a trial judge's findings of fact in a nonjury law action. If the views expressed in that opinion are right, we approach the day of judicial fact-finding infallibility by abdication of our power, and denial of our duty, to review the findings of fact made by our trial judges in such actions. It is said that: "Surely, on this distinctive record of disputed facts and inferences, we have no more right to disturb the trial judge's conclusion in such regard than if it had been reported by a jury." If this be the law of this State, we have indeed traveled great distances since *Schneider* v. *Pomerville, supra; Northwest Auto Co.* v. *Mulligan Lincoln-Mercury, Inc.,* 348 Mich 279; and *Barnes* v. *Beck,* 348 Mich 286, all written for a unanimous Court in 1957.

The scope of our review of a trial judge's fact findings is different from, and broader than, our review of a jury's findings. This Court put it this way in *Schneider,* at pp 54 and 55:

"Our duty under * * * Court Rule No 64 (1945), the question being duly posed and saved for review, is to sift the evidence for determination whether it clearly preponderates in favor of the appellant's cause. Necessarily, the judicial sieve

---

* Added April 14, 1958, to be effective June 1, 1958.  352 Mich xiv.
—REPORTER.

will be of finer mesh than the one correspondingly employed here on review of denial of motion for new trial in a jury case. This is as it should be. A jury's verdict-view of facts is entitled to an even higher degree of appellate respect than is a judge's verdict-view of the same facts, learned though the judge may be in law. For reasons known well to students of American history, a finding of fact by 'the twelvers' is more apt to be sound than that of one man. If this be right, our task at bar is bound to be a more difficult one than if the judgment below had been entered on verdict of a jury. When in rare instance a jury's verdict is judged contrary to overwhelming weight of evidence, the conclusion must be so obvious that verdict-sustaining argument loses all force. On the other hand, when evidence is appraised to determine clear preponderance thereof, forceful argument each way subsists to the last and usually survives final judgment."

In *Northwest Auto Co.* v. *Mulligan Lincoln-Mercury, Inc.*, at p 284, the Court added the limiting qualification that critical proof has been overlooked or ignored before we may reverse or remand on a clear preponderance assignment of error:

"Defendant's proof, supporting its claim for such damages, seems quite persuasive so far as this printed record can or does disclose. Had this Court been constituted and authorized to try law cases anew on pleadings and transcripts, we might agree with defendant that its said proof appears more convincing than that received in opposition. But such is not our province. We must continue to point out to the profession what is now a commonplace—that the function of deciding credibility and finding facts is committed to our courts of original jurisdiction; that we cannot reverse or remand simply because the facts found below are forcefully opposed by others shown in the record, and that we do not reverse or remand on bid of a 'clear preponderance' assignment in the absence of convincing circum-

stances disclosing that crucial proof has been overlooked or ignored. No more need be said in view of recent treatment of this apparently troublesome rule of practice (*Schneider* v. *Pomerville,* 348 Mich 49; and *Barnes* v. *Beck, supra*)."

And in *Barnes* v. *Beck,* in a footnote at p 290, the Court succinctly and accurately states the nature and the scope of, and the limitations upon, our review of nonjury law actions brought to us on a claim that judgment was contrary to the preponderance of the evidence:

"In short, it takes convincing proof (as in *Schneider* v. *Pomerville,* 348 Mich 49) that the judicial trier of facts has overlooked or ignored and thus did not test crucial testimony to warrant reversal or remand by force of an assignment addressed to clear preponderance. Indeed, to sustain such an assignment, we must be shown what is rightly known as a 'glaring error' (*Besser Manufacturing Co.* v. *United States,* 343 US 444, 448 [72 S Ct 838, 96 L ed 1063])."

With due regard for our limited role in this appeal, we conclude that a clear preponderance of the evidence established plaintiff driver's negligence as a contributory cause of the collision and that the trial judge would have so found had he not overlooked crucial proof concerning obstructions to the observations plaintiff driver attempted to make along the intersecting road. The facts with which we deal are as follows:

One sunny, clear, dry, June afternoon, Mrs. Cousino was driving west on the gravel surface of Erie road. Melvin Briskey, one of the defendants, was driving north on Douglas road. Douglas has a blacktop surface until it passes the intersection at Erie, after which it, too, becomes a gravel road. Mrs. Cousino approached the intersection at between 40 and 45 miles per hour. She was familiar with

Erie road and its intersection with Douglas road, having traveled the same route on an average of twice a week for about 3 months. When she was about 150 feet from the intersection she first looked to her left for approaching northbound cars but shrubbery obstructed her view of Douglas road. She then looked to her right, and when she was about 50 feet from the intersection, she made her second observation to her left. At that moment, through a break in the shrubbery, she saw the top of defendants' automobile about 75 feet south of the intersection. She testified that, although she did not know who had the right-of-way, she removed her foot from the accelerator but it was too late to brake the car. The collision occurred almost instantly thereafter.

We have had occasion, recently, to examine the rights and the obligations of automobile drivers we describe as favored,—favored because of a statute, as we have noted above, which gives precedence to a driver on the right over a driver approaching from the left or because of signal devices designed to control automobiles on intersecting roadways. See *McGuire* v. *Rabaut*, 354 Mich 230, and cases therein cited. While recognizing that a favored driver "is not required to have his car under such control as to be able to avoid collision with a subordinate driver coming illegally into his path", we also recognize that the favored driver does have a duty to exercise due care under the circumstances by making observations which a reasonably prudent man would make. *McGuire* v. *Rabaut*, pp 235–237.

This is a case in which plaintiff driver's own testimony, taken in its most favorable light, discloses her complete lack of due care. Traveling along a gravel road at 40 miles per hour toward a familiar crossroad, she made no observation for intersecting traffic until she was only 150 feet away, less than

3 seconds (at 40 miles per hour) from it.' It is at this point we conclude that crucial proof has been overlooked (*Northwest Auto Co.* v. *Mulligan Lincoln-Mercury, Inc.,* 348 Mich 279, 284) by the trial judge. In his opinion, the trial judge found as a fact that when Mrs. Cousino was 150 feet away from the intersection, existing obstructions allowed a view 140 feet down Douglas road. He thereupon concluded that when she looked from that vantage point she saw nothing because "defendant (traveling 15 to 25 miles per hour faster than she) was of course further away than 140 feet at that time." A scale drawing of the scene of the accident introduced in evidence supports the trial judge's finding of fact for the drawing does not show any obstructions at the southeast corner of the intersection. However, the surveyor who prepared the drawing ·testified that he included only the principal obstructions and did not attempt to show shrubs or brush or anything else that obstructed the view from Erie road because such obstructions would vary in height from year to year.

The evidence apparently overlooked by the trial judge, in concluding Mrs. Cousino had an unobstructed view 140 feet down Douglas road and that she did not see defendants' car because it was not yet within that area of the road, is to be found in the following testimony of Mrs. Cousino herself, which discloses the futility of her belated gesture at observation:

"*Q.* When did you make your first observation of traffic approaching from the south as you approached the intersection?

"*A.* About 150 foot.

"*Q.* You made an observation at that time? Could you see anything to the south at that time, any traffic approaching?

"*A.* No, I could not.

"*Q.* Could you see whether there was traffic or was not traffic on the road at that time?

"*A.* There was none.

"*Q.* Could you see the road at that time?

"*A.* No, I couldn't see the road.

"*Q.* Then you didn't know if there was traffic on the road at that time or not, did you?

"*A.* No.

"*Q.* So your observation was useless at that time?

"*A.* Well, I looked to the left.

"*Q.* You looked to the left but all you saw was a bunch of weeds and shrubs and bushes?

"*A.* Yes.

"*Q.* You couldn't see Douglas road at that time?

"*A.* No, I could not see Douglas road.

"*Q.* As a matter of fact, you only got 1 glimpse of Douglas road, did you not?

"*A.* I got 2 glimpses of Douglas road. I looked twice to my left.

"*Q.* But the first time you looked you couldn't see anything?

"*A.* No, I couldn't.

"*Q.* You couldn't see the road?

"*A.* No.

"*Q.* So you only got 1 glimpse of Douglas road; is that right?

"*A.* When I saw Mr. Briskey's car.

"*Q.* That was when you were how far from the intersection?

"*A.* About 50 foot.

"*Q.* Why did you tell us a moment ago that you observed traffic twice on Douglas road?

"*A.* I looked and then I looked to the front, and then I looked again to make sure that there was no traffic coming from either direction, north or south.

"*Q.* And you got no clear view of Douglas road south of the intersection before you were 50 feet from the intersection; is that right?

"*A.* Will you restate that question, please?

"*Q.* Until you were 50 feet from the intersection it was impossible for you to get any view at all of Douglas road?

"*A.* That's right.

"*Q.* That is because it was obscured?

"*A.* Yes.

"*Q.* By bushes, trees, and so forth?

"*A.* Yes."

Having looked, although belatedly, and discovering her view to the left obscured, she proceeded without so much as slackening her speed. Had she decelerated, even slightly, upon discovering she could not see whether danger was approaching, the collision would not have occurred. Mrs. Cousino's testimony was, in effect, that she lowered her head, closed her eyes, and charged blindly through the intersection, conduct not permitted even in the knowing assertion of a right-of-way. *McGuire* v. *Rabaut,* 354 Mich 230, 235.

Judgment should be reversed and cause should be remanded for entry of judgment for defendants. Costs to defendants.

DETHMERS, C. J., and CARR, J., concurred with SOURIS, J.

BLACK, J. (*for affirmance*). I find nothing in this testimonial record justifying the visibly altiloquent jury-argument that "Mrs. Cousino's testimony was, in effect, that she lowered her head, closed her eyes, and charged blindly through the intersection,[1] conduct not permitted even in the knowing assertion of a right-of-way." There is, instead, solid ground for finding no disagreement with Judge Weipert's factual conclusion that the defendant driver's con-

[1] My Brothers are gently reminded that Mrs. Cousino did not even begin to get "through the intersection." The interferer did, 'way through.

duct, as he approached and entered this intersection contrary to one of our oldest rules of the road (CLS 1956, § 257.649 [Stat Ann 1957 Cum Supp § 9.2349]), exhibits guilt of exclusively proximate negligence.

The fact is, if one of these motorists "charged blindly through the intersection," such characterization would fit exclusively the arrant conduct of this 19-year-old defendant driver, Melvin Briskey. Here is his testimony:

"*Q*. Now as you proceeded north on Douglas road did you see the Cousino automobile before you were involved in this accident?

"*A*. No, I did not.

"*Q*. You weren't aware that there was an intersection there at all, were you?

"*A*. Not until after the time of the accident.

"*Q*. You have no recollection of making any observation or looking?

"*A*. Not that I recall.    *  *  *

"*Q*. How does it happen you did not see the Cousino car?

"*A*. Well, you can see there—I mean there was brush right up to the corner, I didn't know that there was even an intersection there until after I was through it.    *  *  *

"*Q*. Mr. Briskey, since you didn't know there was going to be an accident, you didn't change your direction at all, did you, before the accident?

"*A*. Not to my recollection.

"*Q*. You didn't change your speed at all either, did you?

"*A*. Not that I know of."[2]

When one adds to this testimony the undisputed fact that the blacktop pavement of north-south Douglas road, on which young Briskey was traveling,

---

[2] This is no isolated selection of the defendant driver's testimony for forensic purposes. His counsel admit, in their statement of facts, that he was "unaware that there was an intersection there until after the accident." They explain this by saying "There was brush right up to the corner."

ended in the intersection, and that his father's car —after the collision—continued on "about 200 feet from the intersection," the magnitude of his concededly causative negligence becomes manifest. Little wonder the trier of facts found that *the* proximate cause of what happened, including the violent overturning of Mrs. Cousino's car, was such conceded negligence. When a driver plunges through an intersection at unslackened high speed —an intersection which is blind in the very direction of special vigilance owing by him—and does so without even realizing that he is approaching and entering it, his callous inattention should be taken into consideration when the question of contributory negligence of a motorist having the initial right of passage across such intersection is taken under advisement.

Some of my Brothers would silently cast aside, without token of explanation, Michigan's original and recently activated rule that contributory negligence is properly judged, not alone by what the plaintiff did or did not do but also by conjoining breaches of legal duty on the part of the defendant, with respect to which duty the plaintiff had reasonable rights of expectation. See *Clark* v. *Shefferly,* 346 Mich 332, and this connected passage of *DeLuca* v. *Wonnacott,* 358 Mich 319, 324:

"Neither negligence nor contributory negligence exist by themselves in airtight compartments. Especially must this be so in 'wink-of-the-eye' automobile accident cases. Physical propinquity is involved. A self-centered, fragile and crowded humanity endlessly intent on reaching divergent goals is involved. Indeed (if one may still venture to use such archaic terms), simple good manners and consideration for others is involved, which, when reduced to legal terms, means that reciprocal rights

and duties are involved. As we said in *Hoffman* v. *Burkhead,* 353 Mich 47, at pp 55 and 56:

" 'We cannot in these situations isolate and examine the plaintiff's conduct in a vacuum, like a beetle under a glass; his conduct must be examined and weighed in conjunction with what corresponding conduct the plaintiff might reasonably have expected on the part of the defendant.' "

Mr. Justice VOELKER, writing the above in *DeLuca,* was of course harkening our Court back to the universally quoted precepts of Mr. Justice COOLEY, appearing in *Detroit & Milwaukee R. Co.* v. *Van Steinburg,* 17 Mich 99, 119, as follows:

"Moreover, if the danger depends at all upon the action of any other person under a given set of circumstances, the prudence of the party injured must be estimated in view of what he had a right to expect from such other person, and he is not to be considered blamable if the injury has resulted from the action of another which he could not reasonably have anticipated. Thus the problem is complicated by the necessity of taking into account the 2 sets of circumstances affecting the conduct of different persons, and is only to be satisfactorily solved by the jury placing themselves in the position of the injured person, and examining those circumstances as they then presented themselves to him, and from that standpoint judging whether he was guilty of negligence or not."

But recently, and even while this April-submitted case of Cousino has continued to receive disputatious consideration, we have reiterated and reapplied the above rule that a plaintiff in negligence is not to be held contributorily negligent because he did not anticipate a negligent act or acts on the part of the defendant. See *Hainault* v. *Vincent,* 365 Mich 370, 376, where it was said of a manifestly closer question of contributory negligence:

"Plaintiff was not required to anticipate the

negligent or unlawful act of defendant Vincent. *Knoellinger* v. *Hensler,* 331 Mich 197; *Vandervelt* v. *Mather,* 353 Mich 1.[3] The question of whether plaintiff's speed or observations were factors which contributed proximately to the accident was a question of fact for the jury. The burden of proof on that issue was on the defendants. Michigan Court Rule No 23, § 3a (1945).[4] This record does not support a conclusion that the jury verdict was against the great weight of the evidence."

The quoted characterization my Brothers apply to Mrs. Cousino's testimony has been taken impertinently from *McGuire* v. *Rabaut,* 354 Mich 230, 235. We did *not,* in that case, hold favored way drivers to the degree of self-insuring care some of the Brethren would gratuitously impose against her. We did impose upon such drivers the reasonable rules of motoring care found on pages 236–240 of *McGuire's* report, the gist of which was unanimously submitted to the profession as follows (p 236):

"Consequently, in the case before us the favored driver was entitled to assume, as he approached the Hastings intersection, that his right-of-way would not be contested by a subordinate driver. He was entitled to rely upon this assumption until it became clear to him (or, until, as a reasonable man, considering pertinent surrounding circumstances of traffic and terrain, it should have been clear to him) that a subordinate driver was going to challenge or

---

[3] Citing *Vandervelt,* in *Hainault,* we had reference to the following passage thereof (pp 7, 8):

"In *Winckowski* v. *Dodge,* 183 Mich 303, 312, it was said:

" 'Contributory negligence cannot be imputed to a plaintiff for failure to anticipate negligent acts of a defendant—no one need anticipate an unlawful act.'

"Such statement has been repeatedly quoted in subsequent decisions. Among cases in accord therewith are: *Guina* v. *Harrod,* 275 Mich 393; *Suarez* v. *Katon,* 299 Mich 38; *White* v. *Herpolsheimer Company,* 327 Mich 462 (26 ALR2d 667); *Knoellinger* v. *Hensler,* 331 Mich 197."

[4] Added April 14, 1958, effective June 1, 1958. See 352 Mich xiv.—REPORTER.

obstruct his right-of-way. At this point his duty to attempt to avoid the impending collision began. *It is from this point onward,* and not before, with respect to a crossing subordinate driver appearing in his path, *that we scrutinize his acts to determine whether or not he is guilty of negligence for failure to act as a reasonably prudent person, and, in all fairness to him, we must measure his conduct in the light of the emergency then presented, if not of his making."*

Some of my Brothers, determined to try this law case anew, strain mightily to attain plausible ground for rendition of a new verdict here. Utilizing a carefully selected portion of Mrs. Cousino's cross-examination appellants have brought in by supplemental appendix, and ignoring the rest of her testimony[5] and the lucidly persuasive physical facts of the case, such Brothers find a "complete lack of due care" on her part. Thus they would make of this constitutionally ordained appellate court what has become crescently apparent in recent months: a court of trial anew of Rule No 64 cases[6] where, at ebb and flow of majority will, we substitute our own conclusions upon testimony of variant or conflicting inference—testimony the delivery of which we have neither seen nor heard—for the findings upon such testimony of the stipulated trier of facts. This would be shameless usurpation of the historic function of our trial courts, and I will have no part therein for reasons made pungently

---

[5] Mrs. Cousino testified, relevantly on direct examination:

"*Q.* When you saw his car you would say about 50 feet, and he in your opinion was about 75 feet as he emerged from behind the bushes?

"*A.* Yes.

"*Q.* What, then, did you do?

"*A.* Well, I just don't know. I think I took my foot off the accelerator and I did try to apply the brake, but it just was too late.

"*Q.* Did a collision occur then?

"*A.* Yes, it did."

[6] Court Rule No 64 (1945) entitled: Review in the Supreme Court of law cases tried without a jury.—Reporter.

clear in *Hayes Construction Company* v. *Silverthorn,*
343 Mich 421, 428, 429, and *Barnes* v. *Beck,* 348 Mich
286, 289.

Now what really is before us? No more than a
typical intersection case wherein a conscientious and
painstaking circuit judge has found, well within the
reasonable range of the total testimony before him,
that one driver was actionably negligent as charged
by the plaintiff and that the other driver was not
guilty of contributory negligence as charged by the
defendants. Judge Weipert found and concluded,
in an excellently marshalled opinion:

"The proofs introduced at the trial show convinc-
ingly that the view of the driver of a vehicle pro-
ceeding westerly on Erie road, at the time of the
accident, looking to the left toward Douglas road,
was obstructed by shrubs, trees, weeds and brush.
Witness Edward Allen, called by defendants, testi-
fied that undergrowth in the drainage ditch, which
intersects Douglas road approximately 100 feet
south of Erie road, was then such as to make it
impossible for the driver of a vehicle approaching
Douglas road from the east to observe traffic ap-
proaching on Douglas road, until after vehicular
traffic passed the point on Douglas road where the
drainage ditch intersects the highway. By actual
measurement, as shown on exhibit A, the drainage
ditch is approximately 105 feet from the intersection
on Douglas road. In addition Mr. Cousino and Mrs.
Cousino both testified that view to the left on
Douglas road, when approaching Douglas road from
the east on Erie road, was further partially ob-
structed by underbrush and weeds in the ditch which
drains the highway (Douglas road) on the east side.
The court has no question but that Mrs. Cousino's
vision to her left, as she approached the intersection,
was obstructed.

"The evidence leaves little room for argument as
to the actionable negligence of defendant Melvin
Briskey under the statute. He admitted that prior

to the occurrence of the accident, he was not aware
that he was approaching an intersection; that at no
time prior to the occurrence of the collision was he
aware of the fact that a collision was impending; and
that the collision occurred in the intersection. On
this defendant's own admission, therefore, the negli-
gence of the defendant driver, as a proximate cause
of the accident, is established; likewise the court
finds that both plaintiff and defendant vehicles en-
tered the intersection at approximately the same
time, and that plaintiff vehicle, as the automobile
on the right, had the right-of-way.

"Mrs. Cousino testified that, as she approached
the intersection, her speed was from 40 to 45 miles
per hour. James Boardman testified that Mrs.
Cousino passed him, traveling at a speed in the
neighborhood of 30 miles per hour, approximately
1/4 of a mile east of Douglas road, on Erie road.
There is no evidence indicating excessive speed on
the part of Mrs. Cousino.

"There is, on the other hand, convincing evidence
indicating unreasonable and excessive speed on the
part of the defendant driver. Mrs. Cousino testi-
fied that she observed the approach of the Briskey
automobile, upon making her second observation to
her left, and that she formed the opinion, based
upon her experience as an automobile driver, that
the defendant vehicle was traveling at a speed of
from 60 to 65 miles per hour. In addition, the
physical facts indicate inordinate speed on the part
of the defendant Melvin Briskey. The court con-
siders it established by a preponderance of the evi-
dence that the defendant Briskey was traveling at
an excessive and immoderate rate of speed.

"The evidence is uncontroverted that the collision
occurred within the intersection, and that the defend-
ant Melvin Briskey drove into the intersection with-
out even knowing that there was an intersecting
highway. Completely unaware that he was ap-
proaching or entering an intersecting highway, he
made no observations whatever, and was blithely

unaware of the possibility of anyone else having rights incident to the use of the highway. This, coupled with his excessive speed the court finds to be actionable negligence and the proximate cause of the accident.   *   *   *

"When Mrs. Cousino was 150 feet from the intersection, the existing obstructions allowed a view 140 feet down Douglas road, and no further. She did look—and saw nothing, for defendant (traveling 15 to 25 miles per hour faster than she) was of course further away than 140 feet at that time. Reassured, she continued at 40 to 45 miles per hour. This the court is not prepared to say is negligence under these circumstances, for a party having the right-of-way. At that speed, she was less than 3 seconds from the intersection.

"After full consideration of all the circumstances and weighing of the testimony of the several witnesses, reconstructing thereby as far as possible the physical facts confronting the drivers, the court is of opinion that Mrs. Cousino was not guilty of contributory negligence proximately causing this accident."

From out our bourn of law and tome we are told to judge as we would be judged. Abiding that admonition, let us place some high court judge in the driver's seat of Mrs. Cousino's car as both cars approached and entered the intersection of Douglas and Erie roads, one from the east and the other from the south. Conceding (perhaps we should not) that "the experience, training, and temperament of the judge"[7] make him comparably more careful than "the great mass of mankind" we know so well in negligence law (for references see Barron v. City of Detroit, 348 Mich 213, 217), may we then of right intone that our nonpareil judge-driver would have gotten the Cousino car out of the collisive way as

[7] For complete quotation see 3 Cooley on Torts (4th ed), § 481, p 389.

this young hotspur hurled his father's car into and through the intersection? When the emergency— "not of his making"—became evident, would the judge have accelerated, decelerated, or braked in time to get out of the way; the way which by law and rule of the road belonged to him? Something tells this writer that judges are not just that perfect (outside their courtrooms and conference rooms, of course) and that our judge, crawling later out of the completely overturned Cousino car, would not have confessed that he had "lowered his head, closed his eyes, and charged blindly through the intersection." Probably he would have wriggled and squirmed from the car, if not mortally or seriously hurt, with the self-helpful assistance of shockingly unparliamentary language.

Yes, we should judge the intersectional conduct of others as we would have ourselves judged. Whatever a motorist's rate of speed and degree of watchfulness may be as he lawfully proceeds toward and into an intersection with the right-of-way, if at the right time he is nicely short or just beyond the path of the usurper-lawbreaker, all is fortuitously well. Not so otherwise. This mother of 4 young children (one being with her at the time), driving normally and properly as shown fairly by the testimony of a disinterested witness-motorist she had overtaken and passed about a quarter mile back, just happened to enter this arrogantly appropriated intersection at the wrong second. Thus she was confronted by an emergency "not of her making." What she did thereafter was the essence of the negligence defendants charge against her, if in fact it was negligence (*McGuire* v. *Rabaut, supra*). This trier of fact— duly appointed for that purpose by the respective parties litigant—has said it was not. Surely, *on this distinctive record of disputed facts and inferences,* we have no more right to disturb the trial

judge's conclusion in such regard than if it had been reported by a jury.

As here, all or nearly all intersectional collisions are preceded—usually by allowance of no reactive time whatever—by what in tort law is known as "a sudden emergency." Once it is shown that such an emergency has been created by the negligence of 1 of the 2 involved motorists, we judge—or at least constantly say we do—the conduct of the other by our mature rule that "The law makes allowance for acts done in an emergency and in sudden peril and for lack of coolness of judgment incident thereto." (Quotation from *Myler* v. *Bentley,* 226 Mich 384, 386, followed in presently mentioned *Walker* v. *Rebeuhr,* 255 Mich 204, 206.)

Did I say "mature" rule? See the unanimous opinion of *Noyce* v. *Ross,* 360 Mich 668 (per KAVANAGH, J.), quoting from the unanimous opinion of *Schow* v. *Paugh,* 350 Mich 304, 308 (per KELLY, J.), which in turn was pertinently based on the unanimous opinion of *Paton* v. *Stealy,* 272 Mich 57, 62 (per BUSHNELL, J.), which last refers us to the unanimous opinion of *Walker* v. *Rebeuhr, supra* (per CLARK, J.). In the last cited case the rule was taken from Huddy on Automobiles (8th ed), p 359, as follows:

"One who suddenly finds himself in a place of danger, and is required to act without time to consider the best means that may be adopted to avoid the impending danger, is not guilty of negligence if he fails to adopt what subsequently and upon reflection may appear to have been a better method, unless the emergency in which he finds himself is brought about by his own negligence."

It would be hard for anyone, even a Baron Munchausen, to talk down the standout fact that young Briskey's unlawful usurpation of this intersection

was the sole cause of an emergency which suddenly confronted, similarly with no time for reactive judgment and safe reactive action, one who theretofore lawfully approached and entered such intersection. Silently ignoring the aforesaid rule of sudden emergency and the corollary right of Mrs. Cousino to rely on the obligation of northbound motorists to recognize their statutory obligation, some of my Brothers airily resolve to reverse this manifestly sound judgment. No more need be said beyond prediction that such a decision would, in turn, be ignored as precedent like the proverbial *nullius filius* courts on occasion do spawn.

Finally, some of the members of this Court look again upon a hackneyed cliche of the not too distant past: "Had she [Mrs. Cousino] decelerated, even slightly, upon discovering she could not see whether danger was approaching, the collision would not have occurred." Yes indeed, if in retrospect Mrs. Cousino had done this or that prior to entering the intersection (like driving a little faster, for instance, or even staying home that day), "the collision would not have occurred." Such niff-naffy conjectures do not, however, provide a proper test. See *McKenzie* v. *Nelson,* 353 Mich 59, 63, quoting *Ware* v. *Nelson,* 351 Mich 390, 396, as follows:

"If our test of contributory negligence was whether or not plaintiff had done all that he conceivably could have done, or even all that, in retrospect, it is obvious he should have done for his own safety, no negligence action could ever be maintained."

I wonder how many motorists, even expert and ultracareful ones like high court judges, do "decelerate, even slightly," as they proceed on favored ways toward and into each blind or partly blind intersection. So do many readers of our learned opinions.

Picture in mind's eye, if you can, one such peerless driver as he sneaks up on each such intersection, precedently decelerating each time, constantly swiveling head and eyeballs back and forth in the horizontal plane for self-insurance against negligent contest of his legal right, and oblivious by such concentration to favored-way traffic approaching from his invitedly and repeatedly exposed rear. Yea, verily, let us have more of these dreamy dixits from that never-never land where gasoline is unknown and overlords do gather the wool.

As the opinions of this case are released we affirm a judgment of the Ingham circuit, entered after corresponding trial to the court in the like intersectional case of *Gregg* v. *Goodsell,* 365 Mich 685. The only distinction between the 2 cases is that in the latter defendant Goodsell was required to yield the right-of-way to plaintiff Gregg by command of a "stop" sign; whereas here the defendant driver's obligation to yield the right-of-way to plaintiff Ruth Ann Cousino was by command of the driver-to-the-right statute. In both cases brush and weeds obstructed the approach-view of both drivers. Let our conclusion of *Gregg* speak the rest (p 689):

"This brings us to a consideration of the question whether defendant established that plaintiff was guilty of contributory negligence. Apparently the argument of counsel for appellant in this respect is predicated on the theory that plaintiff should have seen defendant's automobile approaching the intersection, should have assumed that it would not stop in obedience to the sign, and that in the exercise of due and proper care for his own safety plaintiff should have accorded defendant the right-of-way. It was in substance plaintiff's testimony that as he approached the intersection he could not see the vehicle coming from the west. Had he seen it he might properly have assumed that it would stop

before entering the intersection. He was not compelled to anticipate the presence of a vehicle whose driver would fail to exercise proper care in its operation. Under the circumstances of the case the questions of negligence and contributory negligence were for determination by the trier of the facts. *Baker* v. *Gushwa,* 354 Mich 241. We do not find that the conclusions reached on the issues involved were at variance with a preponderance of the evidence."

Our task in these cases is the discovery of reversible error, if any. Finding none, my vote to affirm is cast as against all specifications of error.

KELLY and KAVANAGH, JJ., concurred with BLACK, J.

OTIS M. SMITH and ADAMS, JJ., took no part in the decision of this case.