UNITED STATES of America,
Plaintiff,

v.

GLAXO GROUP LIMITED and Imperial
Chemical Industries Limited,
Defendants.

Civ. A. No. 558-68.

United States District Court,
District of Columbia.

June 17, 1971.

**710**

Robert H. Stern, William B. Bohling, Antitrust Div., Dept. of Justice, for United States.

Henry P. Sailer, Washington, D. C., for defendant Glaxo Group Ltd.

Sigmund Timberg, Washington, D. C., for defendant Imperial Chemical Industries Ltd.

## MEMORANDUM

GASCH, District Judge.

In this action the Government seeks declaratory and injunctive [1] relief against two British corporations for violations of section one of the Sherman Act.[2] Defendant Imperial Chemical Industries, Limited (ICI) manufactures the antibiotic griseofulvin. The drug is marketed in the United States by Ayerst Laboratories Division of American Home Products Corporation (Ayerst) under an exclusive distributorship agreement with ICI.[3] Included in this agreement was a provision prohibiting Ayerst from reselling bulk supplies of griseofulvin without ICI's consent. On plaintiff's motion for partial summary judgment this Court ruled that ICI's restriction of its vendee's freedom to resell purchased goods was a *per se* violation of section one of the Sherman Act.[4] Similar agreements between defendant Glaxo Group Limited (Glaxo) and its United States distributors Johnson and Johnson, Inc., and Schering Corporation were subsequently held to be *per se* violations of the Sherman Act.[5] Finally, an agreement between Glaxo and ICI that ICI would not permit its vendees to resell bulk form griseofulvin purchased from ICI was declared a *per se* violation of the antitrust laws insofar as it applied to United States vendees of ICI.[6] These grants of partial summary judgments in favor of plaintiff amount to full adjudication on the merits and the case is now before the Court for entry of final judgment.[7]

Plaintiff and defendants have each submitted proposed final judgments; extensive briefs and affidavits were filed in support of the parties' positions with respect to the scope of relief to be granted and a hearing was held in open Court concerning the form of final judgment. Defendants contend in the first instance that no injunctive relief is warranted under the circumstances of this case. The principal area of contention, however, concerns that portion of the Government's proposed decree which would require defendants to (1) sell griseofulvin in bulk on reasonable and nondiscriminatory terms and prices to all bona fide applicants, and (2) grant reasonable royalty-licenses under their

---

1. Sherman Act § 4, 15 U.S.C. § 4 (1964).

2. 15 U.S.C. § 1 (1964).

3. For further details of the business relationship between ICI and Ayerst, see United States v. Glaxo Group, Ltd., 302 F.Supp. 1 (D.D.C.1969) [hereinafter cited as *Glaxo*].

4. Order of June 4, 1969; *Glaxo*, 302 F. Supp. 1, 11 (D.D.C.1969) (Gasch, J.).

5. Order of November 20, 1969 (Sirica, J.).

6. Order of April 30, 1970 (McGuire, J.).

7. Certain portions of the original complaint were ordered stricken, *Glaxo*, 302 F.Supp. at 15, and plaintiff's motion to amend the complaint was denied, *id.* at 16.

United States patents relating to the manufacture and processing of griseofulvin [8] together with technical data usable in the manufacture or processing of griseofulvin.

■■ Defendants' contention in opposing any injunctive relief is based on the voluntary abandonment of the bulk resale restrictions by Glaxo and ICI prior to litigation in this case. They rely on the rule that even where there has been an adjudicated violation of the antitrust laws injunctive relief is appropriate only where there is a significant threat of future violation. United States v. W. T. Grant Co.[9] The Court concludes, however, that on the evidence presented in this record and on the statement by defendants that it has been their regular policy in the past to include such restrictive covenants in their contracts, that the threat of future violations is sufficient to warrant enjoining repetition of the illegal activity.[10]

The relief proposed by the Government goes beyond mere restraint of the conduct found to be illegal. It seeks positive relief in the form of compulsory sales and compulsory patent-licensing provisions. As authority for this relief, plaintiff relies primarily on International Salt Co. v. United States,[11] Besser Manufacturing Co. v. United States,[12] and United States v. United Shoe Machinery Corp.[13]

The Government characterizes the holding in *International Salt* as authorizing the ordering of compulsory, nondiscriminatory sales to "effectively pry open to competition a market that has been closed by defendants' illegal restraints."[14] The decree in *International Salt*, however, did not compel sale of defendant's machines but rather compelled *nondiscriminatory* lease or sale or license.[15] The illegality found in *International Salt* was a tying clause employed by defendant in leasing patented sale dispensing machines which required the lessee to purchase all salt for use in the machines from International. Thus the requirement that International distribute its machines on a nondiscriminatory basis so as not to give more favorable terms to customers who purchased all or substantially all of their salt from International was closely related to the principal illegal activity adjudicated in the case. The decreeing of compulsory sales by ICI and Glaxo to all applicants cannot logically or factually be related to the continuance of the illegality found in this case—the restraint of their vendees' freedom to resell in bulk.

In *Besser* the defendants had eliminated competition in the concrete block industry through outright purchase of competitors and strict patent-licensing arrangements.[16] After first sustaining the trial court's conclusion that defendants had conspired to monopolize and had monopolized and attempted to monopolize interstate commerce in concrete block making machinery in violation of sections one and two of the Sherman

8. For details of the Glaxo and ICI patents and their licensing agreements, see *Glaxo*, 302 F.Supp. 4 and nn. 10 and 11.

9. 345 U.S. 629, 73 S.Ct. 894, 97 L.Ed. 1303 (1953); United States v. Parke, Davis & Co., 1960 Trade Cases, ¶ 69,776 (D.D.C.).

10. Ordinarily injunctive relief which restrains the doing of acts found to be in violation of the antitrust laws is granted. *See, e. g.*, Standard Oil Co. v. United States, 221 U.S. 1, 77, 31 S.Ct. 502, 55 L.Ed. 619 (1911). *See also*, International Salt Co. v. United States,

332 U.S. 392, 403, 68 S.Ct. 12, 92 L.Ed. 20 (1947) (Frankfurter, J., dissenting).

11. 332 U.S. 392, 68 S.Ct. 12, 92 L.Ed. 20 (1947).

12. 343 U.S. 444, 72 S.Ct. 838, 96 L.Ed. 1063 (1952).

13. 110 F.Supp. 295 (D.Mass.1953), aff'd, 347 U.S. 521, 74 S.Ct. 699, 98 L.Ed. 910 (1954).

14. 332 U.S. at 401, 68 S.Ct. at 17.

15. 332 U.S. at 398 n. 7, 68 S.Ct. 12, 92 L.Ed. 20.

16. 343 U.S. at 447, 72 S.Ct. 838, 96 L.Ed. 1063.

Act, the Court ratified the decree which ordered defendants to offer for sale the machines which they had previously only leased. The Court stated that "[c]ompulsory licensing and sale of patented devices are recognized remedies. They would seem particularly appropriate where, as here, a penchant for abuse of patent rights is demonstrated."[17] In the present case there was no showing that ICI or Glaxo had a "penchant for abuse of patent rights" nor were they convicted, as was Besser, of using their patent rights to monopolize an industry.[18] The direction to offer to sell as well as lease patented machinery in *Besser* went directly to the machanics used to monopolize. The restraint on alienation in the present case, although declared a *per se* violation of section one of the Sherman Act, has not been shown to have had the effect of monopolizing the market nor have ICI's and Glaxo's exclusive distributorship arrangements, which the compulsory sale provision would defeat, been shown to be illegal restraints on competition. The circumstances of the cases and the relationship of the violations to conduct sought to be restrained differ so greatly that *Besser* cannot be held controlling here.

The circumstances and holding in *United Shoe* are quite similar to *Besser*. The court decreed compulsory sales of patented machines after finding that United Shoe's lease-only policy of distributing its machines was the base of its illegal monopolization of the shoe machine industry.[19] We are not here dealing with a lease versus sale situation nor have ICI's and Glaxo's exclusive distributorship methods of marketing their products been found to be the basis for an acquisition of illegal monopoly power.

■ In fashioning a remedy in an antitrust case the Court is not "limited to prohibition of the proven means by which the evil was accomplished, but may range broadly through practices connected with acts actually found to be illegal."[20] But the principal function of an antitrust injunction is to prevent future violations.[21] In determining the scope of relief the "essential consideration is that the remedy shall be as effective and fair as possible in preventing continued or future violations of the Anti-trust Act in the light of the facts of the particular case."[22] Thus while the cases cited by plaintiff and discussed above are authority for the proposition that the Court has the power to grant relief which goes beyond prohibition of the specific conduct found illegal, it is clear that that power is to be exercised only in appropriate circumstances. The circumstances under which otherwise legitimate conduct will be enjoined are where that conduct is so inextricably intertwined with the illegal conduct that effective relief cannot be afforded without its elimination or where the legitimate activity would be a cover for pursuing the forbidden activity.[23]

■ In the present case there has been no determination that the exclusive

---

17. 343 U.S. at 449, 72 S.Ct. at 842.

18. "[This] case has not been characterized as a patent misuse, patent licensing, or know how licensing problem." *Glaxo*, 302 F.Supp. at 9 n. 40.

19. 110 F.Supp. at 344.

20. United States v. United States Gypsum Co., 340 U.S. 76, 88–89, 71 S.Ct. 160, 169, 95 L.Ed. 89 (1950).

21. United States v. Oregon State Medical Society, 343 U.S. 326, 333, 72 S.Ct 690, 96 L.Ed. 978 (1952).

22. United States v. National Lead Co., 332 U.S. 319, 335, 67 S.Ct. 1634, 1642, 91 L.Ed. 2077 (1947).

23. Mr. Justice Frankfurter defined the circumstances where such relief is appropriate.

Reflecting the dictates of fairness, equity does not put under ban that which is intrinsically legitimate unless for all practical purposes it is tied with the illegitimate, or the circumstances of the case makes it reasonable to assume that pursuit of what is legitimate would be a cover for doing what is forbidden.

International Salt Co. v. United States, 332 U.S. 392, 403, 68 S.Ct. 12, 18 (1947) (Frankfurter, J., dissenting).

distributorship arrangements between ICI and Glaxo and their United States distributors were violations of the anti-trust laws. Nor have any instances where such agreements were adjudged illegal been brought to the attention of the Court. The compulsory sales and patent-licensing provisions sought by the Government would, of course, destroy these business arrangements. Furthermore, this case was presented on motion for summary judgment and the restraint on alienation was found to be a *per se* violation of the anti-trust laws—that is, the conduct was declared illegal as a matter of law without requiring the Government to show the effects of the conduct on the market. The Government, in its briefs and affidavits filed in support of its proposed judgment, has attempted to show that market conditions necessitate the broad scale relief requested. The evidence offered, however, shows only that there are other drug companies[24] in the United States that would endeavor to enter the griseofulvin market if they could purchase bulk supplies from Glaxo or ICI on the same terms as their present vendees. The evidence did not show that a current monopoly condition exists as a result of the bulk resale restriction[25] nor did it show that the exclusive distributorship arrangements are covers for the continuation of bulk resale restrictions.[26] Therefore, the Court concludes that to decree compulsory sales would be inappropriate in the circumstances of this case.[27]

■ The Government contends that the decree of compulsory patent-licensing which it requests stands on a separate and equal footing with the request for compulsory sales. The elements discussed above concerning the appropriateness of extraordinary relief in the context of compulsory sales relief are equally applicable in the case of compulsory licensing. Plaintiff has not shown on this record that defendants' current licensing practices are related to the adjudged antitrust violation nor are they methods to circumvent the prohibition of restraints on resale. The authorities

---

24. The Government's affidavits concerned generic and private label drug houses. These firms because of their lower advertising and operating expenses offer drugs at lower prices than do the larger concerns which market their product under their own tradenames. The independent companies must be able to offer significant price reductions to compete effectively with the more highly promoted tradenamed drugs.

25. Defendants contend that the restrictive covenants were never effective and did not restrict competition. They assert further that the griseofulvin market has not been monopolized, pointing out that there are at least three firms competing for shares of a declining market.

26. Government affidavits do show that neither Schering nor Johnson and Johnson resell griseofulvin in bulk and that Ayerst sells only relatively small amounts in bulk. However, since the primary business of these companies is the manufacture and distribution of dosage form pharmaceuticals the paucity of bulk sales of griseofulvin is equally compatible with the exercise of independent business judgment as with the hypothesis of a continuing conspiracy to prevent bulk sales.

27. The present case is factually similar to the case of United States v. Arnold, Schwinn & Co., 388 U.S. 365, 87 S.Ct. 1856, 18 L.Ed.2d 1249 (1967). The holding that the bulk resale restriction was a *per se* violation of the Sherman Act followed the *Schwinn* holding. *Glaxo*, 302 F.Supp. at 4–11. On remand from the Supreme Court, the District Court entered a decree in *Schwinn* which prohibited further restraints on Schwinn's vendees' freedom to resell purchased products. United States v. Arnold, Schwinn & Co., 291 F.Supp. 564, 567 (N.D.Ill.1968). The decree did not require Schwinn to sell to all applicants; in fact, paragraph VI of the decree specifically allows Schwinn to choose its distributors and retailers for various geographic areas. 291 F.Supp. at 565. *See also* the consent decree entered in United States v. Farbenfabriken Bayer A.G., 1969 Trade Cases ¶ 72,918 (D.D. C.), which also concerned resale restrictions in the chemical industry.

upon which plaintiff relies[28] for its proposed remedy are cases where the defendants have misused their patent rights in contravention of the antitrust laws. Here, there has been no showing that either Glaxo or ICI has abused its patent rights[29] and, therefore, they are entitled to exercise the limited monopoly rights granted by law to patent holders.

### FINAL JUDGMENT

Plaintiff, United States of America, having filed its complaint herein on March 4, 1968, and the defendant Imperial Chemical Industries having consented to the personal jurisdiction of the Court, and defendant Glaxo Group Limited's two challenges to jurisdiction having been denied by orders of this Court dated April 30, 1968, and November 20, 1969, and the Court having granted plaintiff's several motions for summary judgment respecting the illegality of the challenged combination and agreements, and the only remaining matter for this Court being the form of relief, and the Court having considered the matter on the basis of the briefs and affidavits of the parties and oral argument and being duly advised, it is hereby

Ordered, adjudged, and decreed as follows:

### I.

As used in this Final Judgment:

(A) "Glaxo" means defendant Glaxo Group Limited;

(B) "ICI" means defendant Imperial Chemical Industries Limited;

(C) "Drug" shall be defined as it is in 21 U.S.C. § 321(g) (1); and such term shall also include any form of such drug (bulk, dosage form or otherwise);

(D) "United States sale" means any sale of any drug, made in the United States or made abroad in contemplation of exportation to the United States;

(E) "Person" means any individual, corporation, association, partnership, or other legal entity;

### II.

(A) The Court has jurisdiction of the subject matter of this action and of the parties hereto.

(B) The defendants have, in violation of Section 1 of the Sherman Act (15 U.S.C. § 1), entered into contracts with their respective purchasers in the United States restricting their freedom to resell the drug griseofulvin in bulk form; and have, in violation of said Section, agreed with each other that defendant ICI should so restrict its purchaser in the United States.

(C) Those portions of the complaint involving plaintiff's challenge to the validity of defendant ICI's U. S. Pat. No. 2,900,304 are dismissed on the ground that plaintiff lacks standing to make such challenge on the basis of the facts alleged by plaintiff.

(D) Plaintiff's motion to amend its complaint to challenge the validity of defendant Glaxo's U.S.Pat. No. 3,330,727 is denied on the ground that plaintiff lacks standing to make such challenge on the basis of the facts alleged by plaintiff.

### III.

The provisions of this Final Judgment applicable to any defendant shall apply also to each of its subsidiaries, successors and assignees, and to their directors, officers, agents and employees, and to all other persons in active concert or participation with such defendant who receive actual notice of this Final Judgment by personal service or otherwise.

---

28. *E. g.*, Besser Manufacturing Co. v. United States, 343 U.S. 444, 72 S.Ct. 838, 96 L.Ed. 1063 (1952); United States v. United States Gypsum Co., 340 U.S. 76, 71 S.Ct. 160, 95 L.Ed. 89 (1950); United States v. National Lead Co., 332 U.S. 319, 67 S.Ct. 1634, 91 L.Ed. 2077 (1947); Hartford Empire Co. v. United States, 323 U.S. 386, 65 S.Ct. 373, 89 L.Ed. 322 (1945).

29. Note 18, *supra.*

## IV.

Each defendant is enjoined and restrained:

(A) From entering into, adhering to, maintaining or claiming any rights under any agreement or understanding pursuant to which any party thereto undertakes not to resell, or is limited, prohibited or restrained in the manner or form in which, or the persons to whom, it resells, any drugs such party purchases in any United States sale.

(B) From refusing to sell any drug in a United States sale to a purchaser because of the purchaser's refusal to enter into a contract, agreement or understanding prohibited by Section IV(A).

(C) From entering into, adhering to, maintaining or claiming any rights under any agreement or understanding with any other persons providing that any party thereto is to enter into, adhere to, maintain or claim any rights under any agreement or understanding of the type prohibited by subsection (A) above.

(D) From entering into, adhering to, maintaining or claiming any rights under any agreement or understanding with any of its licensees under any United States patent relating to drugs, which prevents, restrains or limits any party thereto from selling any drug in bulk form, or otherwise prevents, restrains or limits any party thereto in its free choice of customers or persons with whom it chooses to deal.

(E) From entering into, adhering to, maintaining or claiming any rights under any agreement or understanding with any other persons providing that any party thereto is to enter into, adhere to, maintain or claim any rights under any agreement or understanding of the type prohibited by subsection (D) above.

## V.

For the purpose of securing compliance with this Final Judgment and for no other purpose, and subject to any legally recognized privilege:

(A) A duly authorized representative of the Department of Justice shall, upon written request of the Attorney General or the Assistant Attorney General in charge of the Antitrust Division, and on reasonable notice to either defendant, made to its principal office, be permitted (1) access in the United States during regular office hours of defendant, to all books, ledgers, accounts, correspondence, memoranda and other records and documents in the possession or under the control of such defendant relating to any of the subject matter contained in this Final Judgment and (2) subject to the reasonable convenience of such defendant, and without restraint or interference from it, to interview in the United States officers or employees of such defendant, who may have counsel present, regarding such matters, provided that no defendant shall be obligated to bring to the United States any records or documents or to bring to the United States for the purpose of interview any officer or employee except on order of this Court specifically so providing.

(B) Upon written request of the Attorney General, or the Assistant Attorney General in charge of the Antitrust Division, defendants shall submit such reports in writing with respect to the matters contained in this Final Judgment as may from time to time be requested.

No information obtained by the means provided in this Section V shall be divulged by any representative of the Department of Justice to any person other than a duly authorized representative of the Executive Branch of the United States Government, except in the course of legal proceedings to which the United States is a party for the purpose of securing compliance with this Final Judgment or as otherwise required by law.

## VI.

Jurisdiction is retained for the purpose of enabling any of the parties to this Final Judgment to apply to this Court at any time for such further or-

ders and directions as may be necessary or appropriate for the construction or modification of any of the provisions thereof, for the enforcement of compliance therewith, and for the punishment of violations thereof.

### VII.

This Final Judgment shall terminate ten (10) years after the date of its entry and shall thereafter have no force or effect.

### VIII.

Defendants shall pay all taxable costs herein.